THOMAS R. GOLD, JR., *et al.*, Plaintiffs-Appellants, v. EDWARD R. DUB-ISH *et al.*, Defendants-Appellees.

Fifth District No. 5—88—0577

Opinion filed December 20, 1989.

Donald R. Johannes, of Johannes & Marron, P.C., of Highland, for appellants.

M. Joseph Hill, of Mateyka & Hill, P.C., of Edwardsville, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

This is a permissive interlocutory appeal pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) from orders of the circuit court of Madison County which dismissed counts I through VI, XIII through XVIII, XIX through XXIV, and XXV through XXX of plaintiffs' second amended complaint, and struck from counts I through VI and XIII through XXIV of that complaint plaintiffs' claims for lost profits. The issues presented for our review are: (1) whether counts I through VI adequately alleged causes of action for promissory estoppel, (2) whether counts XIII through XVIII adequately alleged causes of action for equitable estoppel, (3) whether counts XIX through XXX adequately alleged causes of action for fraud, and (4) if plaintiffs have sufficiently alleged causes of action for promissory estoppel, equitable estoppel and fraud under counts I through VI, XIII through XVIII, and XIX through XXIV, respectively, whether plaintiffs may seek recovery for lost profits under those counts. For the reasons which follow, we affirm in part and reverse and remand in part.

Plaintiffs, Thomas R. Gold, Jr., Barbara A. Gold and W. Scott Stroder, sought to buy a grocery business from defendants, Edward R. Dubish, Pauline M. Dubish, Edray Foods, Inc., and Edray Dubish Investments, Inc. When the sale was not consummated, plaintiffs brought a damage action against defendants in the circuit court of Madison County. In their second amended complaint, plaintiffs sought recovery based on promissory estoppel, breach of contract, equitable estoppel, and fraud. Defendants moved to dismiss the promissory estoppel, equitable estoppel and breach of contract counts pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) on the grounds that they failed to state a cause of action. At the same time, defendants filed a motion pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) in which they argued that plaintiffs' breach of contract claims were barred by the statute of frauds and that no basis existed for holding defendants liable on the theory of fraud. Defendants also moved to strike plaintiffs' claim for lost profits from those

counts of their complaint alleging promissory estoppel, equitable estoppel and fraud.

In an order entered February 17, 1988, the circuit court granted defendants' motion to strike and struck from the complaint all references to lost profits which were contained in the counts regarding promissory estoppel, equitable estoppel and fraud. In the same order, the circuit court dismissed counts I through VI of the complaint, dealing with promissory estoppel, and counts XIII through XVIII, which were premised on equitable estoppel, on the grounds that they failed to state a cause of action. Plaintiffs' claims for breach of contract and fraud were allowed to stand.

Although the circuit court's order specifically found that the counts pertaining to fraud were "appropriately plead and should be answered within thirty (30) days," defendants filed a "Motion to Clarify Court's Order" which claimed that the court had not specifically dealt with the issue of the counts sounding in fraud and asked that those counts be dismissed. Plaintiffs, in turn, filed a motion to reconsider in which they requested that the court reverse its decision and: (a) deny defendants' motion to dismiss those counts of the second amended complaint alleging equitable estoppel and fraud, and (b) reinstate their claim for lost profits under the equitable estoppel and fraud counts. In an order entered on August 25, 1988, the circuit court denied plaintiffs' motion to reconsider, granted the "Motion to Clarify Court's Order" filed by defendants, and dismissed those counts of plaintiffs' second amended complaint which sounded in fraud. On plaintiffs' motion, the circuit court found no just reason for delaying enforcement or appeal (107 Ill. 2d R. 304(a)), and the circuit court's orders of February 17, 1988, and August 25, 1988, are each now before us for review.

■■ Because counts I through count VI and XIII through XVIII of plaintiffs' second amended complaint were dismissed pursuant to a motion filed by defendants under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), the only question before us with respect to those counts is whether the circuit court erred in concluding that they failed to state a cause of action upon which relief may be granted. (See *Wooded Shores Property Owners Association v. Mathews* (1976), 37 Ill. App. 3d 334, 337, 345 N.E.2d 186, 189.) As our supreme court has recently reaffirmed, a civil complaint in Illinois is required to plead the ultimate facts which give rise to the cause of action. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 438.) Upon a motion to dismiss, all facts properly pleaded in the complaint are accepted as true, and all reasonable

inferences are drawn in favor of the nonmoving party. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which would entitle the plaintiff to recover. *Board of Education*, 131 Ill. 2d at 438.

 █ Counts I through VI each sought recovery based on the theory of promissory estoppel. This court has recently held:

> "'Promissory estoppel is an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance on another's conduct. [Citation.] It is a doctrine under which a plaintiff may recover without the presence of a contract, and the courts have permitted suit on this theory in the absence of a contract. [Citation.] To recover under this doctrine, the following elements must be met: (1) a promise, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (3) which induces such action or forbearance, and (4) which must be enforced in order to avoid injustice.'" (*Phillips v. Britton* (1987), 162 Ill. App. 3d 774, 785, 516 N.E.2d 692, 700, quoting *Lawrence v. Board of Education* (1987), 152 Ill. App. 3d 187, 201, 503 N.E.2d 1201, 1210.)

We believe that these elements have been adequately alleged here.

Counts I through VI are each based on the same series of events, and each contains the same basic substantive allegations. In those counts, plaintiffs allege that from July 14, 1984, until August 16, 1984, they negotiated with defendants to purchase Edray Foods, Inc., and some real estate owned by Edray Dubish Investments, Inc. Defendants Edward R. Dubish and Pauline M. Dubish were co-owners of each of those enterprises. According to the complaint, defendants required that the transfer of the business and real estate be completed on or by September 1, 1984. Plaintiffs, in turn, informed defendants that in order to meet this time requirement, "all arrangements had to be agreed to by August 17, 1984," so that plaintiffs Thomas Gold and W. Scott Stroder could give two weeks' notice before leaving their existing jobs.

Plaintiffs aver that all material provisions of the contractual arrangements for the sale were specifically agreed upon by the parties "on or about August 17, 1984," and that the terms of the contract were to be integrated into two documents, one for the purchase of Edray Foods, Inc., and one for the purchase of the real estate from Edray Dubish Investments, Inc. The contract for Edray Foods, Inc., was prepared and signed, and defendants arranged for the final terms of the purchase of the real estate to be put in writing. Allegedly, this

was to be a mere formality.

Plaintiffs claim that on the 17th of August they again informed defendants on numerous occasions that in order to comply with defendants' requirement that the transfer be completed by September 1, Thomas Gold and W. Scott Stroder would have to tender their resignations on that day and they would do so only if defendants "affirmed and/or confirmed a completed deal." Moreover, they specifically requested that defendants affirm and/or confirm the bargain as completed so that Thomas Gold and Stroder could tender their resignations and meet the September 1 deadline required by defendants. Plaintiffs allege that on August 17, defendants then "either affirmatively and/or by silence, themselves and/or through their agents, including their attorney, *** represented and promised that the transaction was agreed to and completed, and all material provisions affirmed and/or confirmed."

Plaintiffs thus did aver the first requirement for promissory estoppel, i.e., the existence of a promise. In dismissing plaintiffs' promissory estoppel claims, the circuit court read plaintiffs' complaint as attempting to impose liability on defendants based on a promise which could only be inferred from defendants' silence. Although the circuit court recognized that situations do exist where estoppel may be based on silence, it believed that plaintiffs had failed to allege the existence of such circumstances here.

The problem with the circuit court's analysis is that it reads plaintiffs' complaint too narrowly. As we have just discussed, plaintiffs specifically allege that defendants had represented and promised that the transaction was agreed to and completed and that all material provisions had been affirmed or confirmed either through their silence "and/or" affirmatively. Because plaintiffs have thus averred the existence of an affirmative promise, whether a promise could also be inferred from defendants' silence under the circumstances present here need not even be addressed.

As alleged in their complaint, plaintiffs informed defendants on or about August 14, 1984, that in order to comply with defendants' requirement that the transaction take place on or by September 1, 1984, all arrangements had to be agreed to by August 17, 1984, so that Thomas Gold and Stroder could tender their resignations from their current employment. On or about August 17, 1984, plaintiffs again informed defendants on numerous occasions that to comply with defendants' deadline, Gold and Stroder would have to tender their resignations on that day and would do so only if defendants affirmed and/or confirmed that the deal had been completed, and they specifi-

cally requested defendants to affirm or confirm that the transaction had been completed so that Gold and Stroder could tender their resignations. If defendants, in fact, promised that the transaction would be completed and did so under these circumstances, we believe that they should reasonably have expected their promise to "induce action or forbearance of a definite and substantial character" on the part of plaintiffs, namely, that Thomas Gold and Stroder would quit their jobs in anticipation of taking over the business. Thus, the second element necessary to establish promissory estoppel has likewise been sufficiently averred.

█ That plaintiffs have adequately alleged the remaining elements for promissory estoppel has not been disputed. According to counts I through VI, plaintiffs Thomas Gold and W. Scott Stroder did, in fact, resign from their current employment based upon defendants' promise that the transaction would be completed, and they allege that they would not have done so but for defendants' promise. Upon resigning from their jobs, Thomas Gold and Stroder began working at defendants' warehouse in order to familiarize themselves with the business, they took inventory of the business stock, they examined the books, accounts and insurance records of the business, they made a sales call on at least one of defendants' customers, and they took at least two orders from prospective customers. These allegations, if true, would be sufficient to establish that defendants' promise did, indeed, induce action of a definite and substantial character by plaintiffs.

█ Plaintiffs' complaint likewise contains allegations which, if true, would establish that plaintiffs sustained significant damage as a result of their reliance on defendants' promise that the deal would be completed. Plaintiffs allege that they incurred various expenses "in preparation and consummation of the completed deal as represented by defendants," that Thomas Gold and Stroder lost substantial amounts of income and benefits when they terminated their previous employment in anticipation of taking over defendants' business, and that they "incurred expenses in the pursuit and securing of alternative employment as a result of Defendants' failed promises and representations." Under these circumstances, we believe that the trier of fact could find that defendants' promise must be enforced in order to avoid injustice.

█ █ Just as counts I through VI were thus sufficient to state a cause of action based on promissory estoppel, we believe that counts XIII through XVIII have adequately alleged the elements for equitable estoppel. The factual predicate for plaintiffs' equitable estoppel

counts is the same as that for its counts sounding in promissory estoppel. The two doctrines are, of course, somewhat different. While promissory estoppel requires proof of an unambiguous promise, equitable estoppel does not. Equitable estoppel is a doctrine that is invoked to prevent fraud and injustice; the test is whether, considering all the circumstances of the specific case, conscience and honest dealing require that a party be estopped. Equitable estoppel may arise whenever a party, by his word or conduct, reasonably induces another to rely on his representations, and leads another, as a result of that reliance, to change his position to his injury. (*Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 277, 504 N.E.2d 193, 199.) Under the facts as alleged here, however, there is no practical difference between the two theories of recovery. Because we believe that plaintiffs have adequately pleaded the elements of promissory estoppel, we must therefore also conclude that they have adequately alleged the elements of equitable estoppel.

■ We turn then to the counts of plaintiffs' complaint sounding in fraud. Unlike defendants' motion to dismiss plaintiffs' estoppel counts, which challenged the facial sufficiency of the pleadings, defendants' motion to dismiss plaintiffs' fraud claims was purportedly based exclusively on section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), which provides that a defendant may move for dismissal on the grounds that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim" (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)).

■ "Affirmative matter" within the meaning of this statute is something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. It must, however, be something more than evidence offered to refute a well-pleaded fact in the complaint, for, as in the case of a motion under section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), such well-pleaded facts must be taken as true for the purposes of a motion to dismiss under section 2—619(a)(9) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)). *Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 757, 502 N.E.2d 1096, 1098.

■ In this case, no such "affirmative matter" was advanced. Based on defendants' written motion, it appears that they actually meant to argue that the fraud counts, on their face, failed to state a cause of action. This was a question which should have been raised in

a section 2—615 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), not a motion brought under section 2—619 (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). Even if defendants' motion is treated as one brought pursuant to section 2—615, however, it should not have been granted.

■■ Our supreme court has recently held that in order recover for fraudulent misrepresentation, a plaintiff must plead and prove: (1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance. *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 452.

Like plaintiffs' equitable estoppel counts, plaintiffs' counts in fraud incorporate by reference the basic substantive factual allegations set forth in their counts alleging promissory estoppel. For the purposes of the fraud counts, the requisite "false statement of material fact" was defendants' representation that the transaction for the sale of the business was "affirmed and/or confirmed." Plaintiffs further specifically allege that when defendants made the foregoing representation, which was, in effect, a promise of performance, they had no intention of keeping that promise, and they made the promise with the intention of having plaintiffs rely on it. As with the promissory estoppel and equitable estoppel counts, plaintiffs further allege that they took action based on defendants' promises, in particular, that Thomas Gold and Stroder quit their jobs, and they once again set forth the various damages they sustained as a result of such reliance, including lost income, the expenses incurred in the pursuit and securing of alternative employment after the business deal failed, and the expenses incurred in "preparation and consummation of the completed deal as represented by Defendants."

■■ ■ Defendants argue that the circuit court was nevertheless correct in dismissing the fraud counts because the allegedly false statements here constituted nothing more than misrepresentations about events to occur in the future, which cannot give rise to an action for fraud. This argument must fail. While it is true that misrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud, our supreme court has recognized an exception to this rule. Under this exception, such promises are actionable if "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." (*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 168.) This exception

applies here. The allegations in plaintiffs' complaint, along with the inferences which can reasonably be drawn from those allegations, clearly indicate that defendants promised plaintiffs that the transaction would be completed in order to induce plaintiffs to quit their jobs so that plaintiffs' bargaining position would be weakened and defendants could then impose different contractual terms on them. The false promise or representation of future conduct, *i.e.*, the promise that the deal would be completed, was thus alleged to be the scheme employed to accomplish the fraud.

■ Defendants also argue that plaintiffs' fraud counts cannot stand in light of this court's prior opinion in *Gold v. Vasileff* (1987), 160 Ill. App. 3d 125, 513 N.E.2d 446, which arose out of this same litigation. This argument is not well taken. In *Gold v. Vasileff*, we affirmed the circuit court's dismissal, for failure to state a cause of action, of those counts of the complaint directed against defendants' attorney, Nick Vasileff. Central to our holding was Vasileff's status as an attorney and the public policy requirement that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect. (160 Ill. App. 3d at 128, 513 N.E.2d at 448.) These considerations obviously have no relevance with respect to the promises or representations made to plaintiffs by defendants themselves. Moreover, a review of the record discloses that, unlike the fraud counts at issue here, the fraud counts directed against attorney Vasileff contain no allegation that the false representations allegedly made by Vasileff constituted a scheme or were even any part of some scheme employed to accomplish the fraud.

■ Plaintiffs next argue that the circuit court erred when it struck plaintiffs' claim for lost profits from the counts in their complaint alleging promissory and equitable estoppel and fraud. It has been recognized in this State that an award of damages based on lost profits may be appropriate in a promissory estoppel case when such an award is necessary in order to do complete justice. (*Gerson Electric Construction Co. v. Honeywell, Inc.* (1983), 117 Ill. App. 3d 309, 312-13, 453 N.E.2d 726, 728.) Although the plaintiffs have not cited and we have not found any Illinois decisions which have considered the matter, we believe that the same rule should apply where the cause of action is predicated upon equitable estoppel. Once evidence is adduced in this case, it may turn out that plaintiffs cannot establish their lost profits with reasonable certainty or facts may appear which establish that an award of lost profits is not, in fact, necessary in order to prevent injustice. At this point, however, we are merely at the

pleading stage, and there is nothing on the face of plaintiffs' complaint which would prevent them from recovering lost profits on their estoppel claims as a matter of law.

Because we are reversing the circuit court on this point and remanding the cause for further proceedings, there is one additional point we feel should be addressed with respect to the allowable damages on plaintiffs' estoppel claims. The point is a straightforward one, and we raise it simply to provide guidance to the court and the parties on remand. It is simply this: if plaintiffs prevail on the merits on their estoppel claims, they should not be allowed to receive damages for both the lost profits they would have received had the transaction been completed as promised and the income they lost when they resigned from their old jobs. If the deal had gone forward as it was supposed to, plaintiffs would still have resigned from their jobs. Correspondingly, if defendants had not promised that the transaction would be completed, plaintiffs would not have left their current employment. As alleged in plaintiffs' complaint, there is no set of circumstances under which plaintiffs would ever have continued to be paid for doing their old jobs, while earning income from the new business. To allow plaintiffs to recover for both lost wages and lost profits would therefore place them in a better position than they would have been in had the misrepresentation not occurred.

Although we believe that the circuit court erred in striking the claim for lost profits from plaintiffs' estoppel counts, we agree with defendants that the circuit court properly struck the lost profit claims from plaintiffs' fraud counts. In cases of fraud, the damages recoverable must have proximately resulted from the fraud. (37 C.J.S. *Fraud* §141(b) at 466 (1943).) A plaintiff may recover damages for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations. (19 Ill. Law & Prac. *Fraud* §54 at 622 (1956).) As our previous discussion has indicated, the representation upon which plaintiffs relied here was that the transaction would be completed. Plaintiffs allege in their complaint that they quit their jobs in reliance on this representation and incurred expenses "in preparation and consummation of the completed deal as represented by Defendants." For this, they seek lost wages and benefits resulting from the termination of their previous employment, expenses incurred in pursuing and securing new jobs, and the recovery of the expenses they incurred in the preparation and consummation of the deal. There is no dispute that all of these damages, which are in the nature of "out-of-pocket" losses, would be recoverable if proved at trial, for they certainly flow directly from plaintiffs'

having acted on defendants' representations.

■■ ■ While the "out-of-pocket" losses claimed by plaintiffs are thus proper, we have found no Illinois authorities which support a claim for lost profits under the circumstances present here. We are aware that it has been held in this State that a "benefit-of-the-bargain" formula for damages is proper in an action for fraud. (See, *e.g.*, *In re Application of Busse* (1984), 124 Ill. App. 3d 433, 439, 464 N.E.2d 651, 656.) Similarly, the Restatement (Second) of Torts §549(2) (1977) provides that in addition to damages measured by out-of-pocket loss,

> "[t]he recipient of a fraudulent misrepresentation in a business transaction is also entitled to recover additional damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty."

If this rule applied, we believe that lost profits would be a compensable element of damages. The problem, however, is that the rule appears to have been designed for situations where the transaction between the parties has actually been consumated based on the fraudulent misrepresentation (see Restatement (Second) of Torts §549, Comment on subsection (2), at 114-17 (1977)), a circumstance not present in the case before us. The sale of the business here was never completed and, unlike plaintiffs' estoppel counts, plaintiffs' fraud claims are not premised on the notion that defendants should be precluded, by their words or conduct, from denying that the deal would be completed as they had represented. As defendants' alleged fraudulent misrepresentations did not ultimately induce plaintiffs to consumate the bargain, benefit-of-the-bargain damages, including lost profits, are not appropriate.

■■ Finally, defendants argue that the circuit court acted properly in dismissing the various promissory estoppel, equitable estoppel and fraud counts against defendants Edward R. Dubish, Pauline M. Dubish and Edray Foods, Inc., because they are not necessary parties to this litigation. Defendants raised this argument only in the most cursory fashion before the trial court, and the trial court correctly refused to rely upon it as a basis for its decision. It may well prove true that the Dubishes and Edray Foods, Inc., should not be held liable for anything which happened to plaintiffs. The problem is that defendants' arguments regarding the status and liability of the various defendants can only be resolved after evidence is taken in the case. At this point, however, we are still at the pleading stage, and we cannot say as a matter of law that plaintiffs' allegations, if true, would be insufficient to impose liability on defendants.

For the foregoing reasons, the February 17, 1988, order of the circuit court of Madison County is reversed insofar as it dismissed counts I through VI and counts XIII through XVIII of plaintiffs' second amended complaint and ordered stricken the references to future lost profits contained in those counts. Its decision to strike the reference to future lost profits in counts XIX through XXIV is affirmed. In addition, the circuit court's August 25, 1988, order dismissing counts XIX through XXX is reversed. The cause is remanded for further proceedings consistent with this order.

Affirmed in part; reversed and remanded in part.

WELCH and HOWERTON, JJ., concur.