The EDWARD J. DeBARTOLO CORPORATION, Edward J. DeBartolo, Edward J. DeBartolo, Jr., as Trustee for Lisa Marie DeBartolo Revocable Trust and Tiffanie Lynne DeBartolo Trust No. 7 and as Executor of the Estate of Edward J. DeBartolo, Marie Denise York DeBartolo, as Trustee for the Edward J. DeBartolo Trust Nos. 8, 9, 10 and 11 and as Executor of the Estate of Edward J. DeBartolo, the DeBartolo Family Limited Partnership, Anthony W. Liberati, William D. Moses, and Richard S. Sokolov, Plaintiffs,

v.

COOPERS & LYBRAND, Eugene M. Freedman, Robert T. Caruso, Thomas J. Colligan, Warren D. Jones, William F. Buettner, Jr., Gregory S. Finerty, Theodore G. Glyptis, James R. Lattanzi, Garrett L. Stauffer, Louis L. Testoni, Howard R. Von Schaven, James H. Weber, and as class representatives of all partners of Coopers & Lybrand, Defendants.

GROVE ASSOCIATES, Chesapeake Center Associates, Terrace Associates, Philadelphia Center Associates, Magna Trust Company, Trustee under Trust # 03–90–0977–00 fka Westfield Plaza Associates, Stuart Square Peripheral, San-

---

dusky Center Partners, Palm Beach Mall, Inc., Highland Lakes Associates, TC Community Center Partnership, Illinois Centre Associates, Coolsprings Crossing Limited Partnership, Biltmore Square Associates, Berrien Associates, Northfield Center Peripheral Associates, Desoto Center, Inc., University Part Associates, Glen Burnie Mall, Inc., Plaintiffs,

v.

COOPERS & LYBRAND, Eugene M. Freedman, Robert T. Caruso, William F. Buettner, Jr., Gregory S. Finerty, William K. O'Brien, Larry S. Schumer, John Henry Cynkar, Robert Scott Williams, Richard L. Baird, John E. Easton, Phillip H. Reed, Jr., V.M. O'Reilly, John J. Roberts, Steven L. Skalak, Bjorn Hanson, Richard E. Sherman, individually and as class representatives of all partners of Coopers & Lybrand, Defendants.

Civil Action Nos. 92–1938,
93–1437 and 93–2089.
MDL No. 959.
Misc. No. 93–96.

United States District Court,
W.D. Pennsylvania.

June 11, 1996.

James H. McConomy, Pittsburgh, PA, for DeBartolo Corp.

Robert J. Sisk, New York City, for Coopers & Lybrand.

Roy L. Reardon, New York City, for Cooper's Partners.

## OPINION

ZIEGLER, Chief Judge.

■ Pending before the court are the motions of defendants, Coopers & Lybrand, a nationwide accounting firm, and a certified class of partners and principles of the firm (hereinafter "Coopers"), for judgment notwithstanding the verdict of the jury on the issue of liability, and for a new trial. At the outset, we must address the argument of the prevailing plaintiffs, including the DeBartolo[1] and Grove Associates Plaintiffs[2] (collectively, the "DeBartolo Plaintiffs"), that we should defer consideration of the pending motions until the damages phase of the trial is completed. Plaintiffs contend that resolution of the instant motions will cause prejudicial delay and will "raise the prospect of piecemeal appeals, inasmuch as any order entering a judgment before the damages ver-

---

1. The Edward J. DeBartolo Corporation, The Estate of Edward J. DeBartolo, Edward J. DeBartolo, J., as Trustee for Lisa Marie DeBartolo Revocable Trust and Tiffanie Lynne DeBartolo Revocable Trust, and for the Edward J. DeBartolo Trust No. 7, Marie Denise DeBartolo York, as Trustee for the Edward J. DeBartolo Trust Nos. 8, 9, 10 and 11, the DeBartolo Family Limited Partnership, Anthony W. Liberati and Richard S. Sokolov.

2. Grove Associates, Chesapeake Center Associates, Terrace Associates, Philadelphia Center Associates, Magna Trust Company, Trustee Under Trust # 03–90–0977–00 f/b/o Westfield Plaza Associates, Stuart Square Peripheral, Sandusky Center Partners, Palm Beach Mall, Inc., Highland Lakes Associates, TC Community Center Partnership, Illinois Centre Associates, Coolsprings Crossing Limited Partnership, Berrien Properties L.L.C., as successor in interest to Biltmore Square Associates, Berrien Associates, Northfield Center Peripheral Associates, Desoto Center, Inc., University Park Associates, and Glen Burnie Mall, Inc.

dicts would be immediately appealable...." Plaintiffs rely on *EEOC v. State of Delaware Dep't of Health & Social Servs.*, 865 F.2d 1408, 1413 (3d Cir.1989).

Ironically, the decision actually supports the position of Coopers. In *EEOC v. State of Delaware,* then district court judge, the Honorable Jane Roth, granted a motion for judgment NOV following a verdict for the plaintiffs on the issue of liability in a bifurcated trial, thereby obviating the need for a trial on damages. If Judge Roth had deferred ruling on the motion for judgment NOV, and proceeded to trial on damages, she would have presided over an unnecessary expenditure of limited judicial resources. On appeal, the Court of Appeals held that the order was "final" because the district court had entered judgment on all claims of all plaintiffs, and there was no reason to try the issue of damages.

Applying these teachings, it is clear that we have a duty to rule on Coopers' motions before the damages trial because if Coopers prevails and the court enters judgment on all claims of all plaintiffs, there will be no trial on damages. Additionally, if Coopers prevails on some but not all of plaintiffs' claims, federal law requires that we try the claims that remain before a jury empaneled to assess damages. Contrary to the argument of plaintiffs, there will be no piecemeal appeals because a party can appeal only from the entry of a final judgment, and the grant of judgment on some but not all of the claims of plaintiffs is not a final judgment. *Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976).

Plaintiffs also have suffered no prejudice from the briefing schedule of the court. The briefing schedule was ordered on March 1, 1996, which is two weeks after the jury rendered its verdict on liability. The parties were given 30 days within which to file briefs and that strikes us as a reasonable period for briefing following a five month jury trial, and a pending motion by Coopers which challenges the sufficiency of the evidence on all claims of all plaintiffs.

Finally, Coopers has the right to file these motions after the jury's findings on the issue of liability. First, Rules 50 and 59 require only that an appropriate motion shall be filed not later than 10 days after the entry of judgment. Since no final judgment has been entered, Coopers' motions are timely. Second, neither Rule 50 nor Rule 59 limits the number of motions that can be filed so long as they are timely. Third, Coopers has the right to bring to the court's attention any claim in which there is no legally sufficient evidentiary basis for the jury to consider in the damages phase of the trial. Fourth, Coopers has the right to request reconsideration of any ruling that was made by the court with respect to defendants' Rule 50 motions during the liability phase. And fifth, the court has a duty to prune all legally deficient claims from the action and if a party desires to challenge the ruling, federal law provides that a party can appeal only after the district court enters final judgment on all claims. *Compare* 28 U.S.C. § 1291 *with* 28 U.S.C. § 1292(b) *and* Fed.R.Civ.P. 54(b). In sum, we hold that plaintiffs have suffered no prejudice from resolution of the pending motions, and there is no prospect of piecemeal appeals because an interlocutory order is not appealable.

Before turning to the merits of Coopers' motions, we would be remiss if we did not remind the parties that much has been accomplished in this MDL proceeding in a very short period of time. This action began with over 49 civil actions involving multiple parties asserting complex claims under federal and state law. Plaintiffs claimed money damages allegedly in excess of $2 billion against a host of defendants, including Coopers. In a period of 3 years, discovery was completed, 43 civil actions were settled, 61 written opinions were filed by the court, 335 orders were entered on the docket, a five month jury trial was held, and three appeals were taken to the Court of Appeals. In short, while plaintiffs are anxious to proceed to the next phase of this litigation, we will do so only after the pending motions have been resolved with study and reflection.

We turn now to the motion of Coopers for judgment as a matter of law with respect to the claims of the DeBartolo Plaintiffs. The jury found in the liability phase of the trial that the DeBartolo Plaintiffs had proven the

elements of a Rule 10b–5 claim by a preponderance of the evidence, and the elements of a state law fraud claim by clear and convincing evidence. Coopers contends that we should enter judgment as a matter of law on all claims notwithstanding the verdict of the jury because Plaintiffs failed to adduce a sufficient quantity of evidence of scienter under Rule 10b–5, and failed to produce clear and convincing evidence of fraudulent intent under Pennsylvania common law. In addition, Coopers contends that it is entitled to judgment as a matter of law on the DeBartolo Plaintiffs' common law fraud claims that are based on Phar–Mor's financial statements for fiscal years 1984, 1985 and 1986.

Viewing the evidence in the light most favorable to the DeBartolo Plaintiffs, as we must, we conclude that there is sufficient evidence to support the verdict of the jury with respect to the Rule 10b–5 claims. Specially, we find that there is sufficient credible and competent evidence to support the jury's finding that Coopers & Lybrand made reckless and misleading statements when it represented that it had performed GAAS audits (and issued clean audit opinions) during the relevant period for the stock purchases in October 1990; omitted to state material facts which were necessary under the circumstances; Coopers acted recklessly; the DeBartolo Plaintiffs justifiably relied upon the audit opinions during the relevant time period prior to the purchases in 1990; plaintiffs suffered damages as the proximate result of the misrepresentations and omissions; and an instrument of interstate commerce was used in the purchase of the securities. Coopers' motion for judgment as a matter of law will be denied with respect to the purchase of 750,000 shares and the separate purchase of 3,750 shares of Phar–Mor common stock in October 1990, which appear on the verdict slip at "DeBartolo Plaintiffs Interrogatories To Jury" at No. I, 1 and 2.

We turn now to the state law claims based on Pennsylvania law. The DeBartolo Plaintiffs must prove their claims of fraud by clear and convincing evidence, and whether the Plaintiffs have sustained their burden of proof with respect to any of the purchases, investments, transactions and leases by clear

and convincing evidence is an exceedingly close question.

With respect to the common law fraud claims based on the financial statements of Phar–Mor for the fiscal years 1984, 1985 and 1986, we will grant the motion of Coopers for judgment as a matter of law. We find that the DeBartolo Plaintiffs have failed to sustain their burden of proof by clear and convincing evidence and that there is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiffs on the claims based on those financial statements.

The DeBartolo Plaintiffs presented evidence that they relied on the 1984, 1985 and 1986 audited financial statements in making three purchases of Phar–Mor stock: (1) 50,-000 shares purchased in December 1985; (2) 12,301 shares in September 1986; and (3) 4,871 shares purchased in July 1987. In response, Coopers argues that, with respect to these purchases, the DeBartolo Plaintiffs have failed to adduce clear and convincing evidence that Coopers' audits of those years were the proximate cause of their losses.

Coopers' argument is premised on the fact that there is no clear and convincing evidence that Phar–Mor's financial statements were materially misstated for fiscal years 1984, 1985 and 1986. None of the expert witnesses called by plaintiffs testified that the financial statements failed to accurately portray the financial condition of Phar–Mor during these years. One expert witness, Daniel Dooley, stated that there was fraud in the financial statements in 1986. Transcript of October 24, 1995 at p. 96. However, Dooley's testimony on this issue fails to surmount the clear and convincing evidentiary standard because (1) he provided no supporting evidence of fraud in 1986; (2) he did not testify that the alleged fraud resulted in a material misstatement of the 1986 financials; and (3) his testimony was limited to fiscal years 1987 through 1991. We agree with Coopers that the DeBartolo Plaintiffs have failed to prove that the 1984, 1985 and 1986 financial statements were materially misstated.

Coopers argues that, because Phar–Mor's statements were not materially misstated in 1984, 1985 and 1986, Coopers' failure to perform GAAS audits in those years was not the

proximate cause of the losses suffered by the DeBartolo Plaintiffs. Although Coopers concedes, for purposes of this argument, that the DeBartolo Plaintiffs relied on the audited financial statements in making the stock purchases, it distinguishes reliance from "loss causation," and argues that the DeBartolo Plaintiffs have failed to establish loss causation by clear and convincing evidence.

■ Causation under Rule 10b–5 requires both transaction causation and loss causation. *In re Catanella & E.F. Hutton & Co., Inc. Secs. Litig.*, 583 F.Supp. 1388, 1414 (E.D.Pa. 1984). Transaction causation focuses on whether the misrepresentation induced the plaintiff to buy the security; loss causation looks to whether the misrepresentation caused the plaintiff's pecuniary injury. *Id.* Because common law tort principles underlie the federal securities laws, analogies can be drawn between these causation concepts and the law of torts. *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683 (7th Cir.), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990). Indeed, transaction causation corresponds to the cause-in-fact requirement, while loss causation is often described as another term for proximate cause. *In re Catanella*, 583 F.Supp. at 1414 n. 38; *see Bastian*, 892 F.2d at 686 (loss causation is "more accurately described as an element of cause, period.").

■ To satisfy transaction causation, a plaintiff must prove that "but for" the misrepresentations, he/she would not have engaged in the transaction in question. *In re Catanella*, 583 F.Supp. at 1414. Because transaction causation also satisfies the reliance element, the terms are often confused and used interchangeably. *Id.; see Sharp v. Coopers & Lybrand*, 649 F.2d 175, 186 (3d Cir.), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). In contrast, loss causation requires a plaintiff to prove that the misstatement was the direct, or proximate, cause of the injury. *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir.1981), *aff'd in part, rev'd in part*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). If the injury is attributable to an independent intervening cause, the chain of causation is broken. *In re Catanella*, 583

F.Supp. at 1416; *Huddleston*, 640 F.2d at 549 n. 25.

Although the Court of Appeals for the Third Circuit has not directly addressed the issue of loss causation, it seems to have adopted the requirement. In *In re Phillips Petroleum*, the Court of Appeals listed proximate cause as an element of a Rule 10b–5 claim, and cited the *Huddleston* requirement that "[t]he misrepresentations must touch upon the reasons for the investment's decline in value." *In re Phillips Petroleum Secs. Litig*, 881 F.2d 1236, 1244 (3d Cir.1989), citing *Huddleston*, 640 F.2d at 549. The Court of Appeals has also noted that "[r]eliance is therefore *one* aspect of the ubiquitous requirement that losses be causally related to the defendants' wrongful acts." *Sharp*, 649 F.2d at 186 (emphasis added). Moreover, a majority of recent authority favors the requirement. *See, e.g. Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1495–96 (2d Cir.1992); *Bastian*, 892 F.2d at 682–86; *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 785–86 (11th Cir.1988); *Bennett v. United States Trust Co. of New York*, 770 F.2d 308 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *In re Catanella*, 583 F.Supp. at 1414; *Huddleston*, 640 F.2d at 549; *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 380–81 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *but see Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 708–10 (2d Cir.), *cert. denied sub nom, Wood Walker & Co. v. Marbury Management, Inc.*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980).

The rationale for requiring loss causation is that "[f]rom time immemorial proof of proximate cause—the legal link between the misconduct alleged and the injury averred—has been a precondition of recovery under theories of fraud and deceit." *Marbury*, 629 F.2d at 718 (Meskill, J., dissenting). Without a requirement that the harm suffered "flowed" from the misstatement, the maker of the misstatement would become "an insurer of the investment, responsible for an indefinite period of time for any and all manner of unforeseen difficulties which may eventually beset the stock." *Id.; see also*

Restatement (Second) of Torts § 548A (1976); *Prosser & Keeton on the Law of Torts,* § 110, at 767 (5th ed. 1984). We therefore hold that loss causation is an element of a Rule 10b–5 claim.

■ The DeBartolo Plaintiffs point out that their 1985, 1986 and 1987 stock purchase claims are based on Pennsylvania law, and we agree that loss causation is not a requirement for a common law fraud claim. However, in order to prove a cause of action for fraud under Pennsylvania law, a plaintiff must establish damage as a proximate result of the misrepresentation. *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994). Proximate cause is established by evidence that the conduct in issue was a "substantial factor" in bringing about the plaintiff's harm. *Whitner v. Von Hintz,* 437 Pa. 448, 263 A.2d 889 (1970). Because loss causation reflects the rule of proximate cause borrowed for use in the federal securities law context, we find that loss causation is instructive in determining whether the DeBartolo Plaintiffs have proved by clear and convincing evidence that the losses suffered on their early year purchases were caused by Coopers' failure to perform GAAS audits in 1984, 1985 and 1986.

In order to establish proximate cause for their early year purchases, the DeBartolo Plaintiffs had to prove by clear and convincing evidence that the Coopers audit failures in 1984, 1985 and 1986 were a substantial factor in bringing about the losses that they suffered. Coopers contends that because the financial statements accurately portrayed the financial condition of Phar–Mor for the years 1984, 1985 and 1986, its failure to perform a GAAS audit in those years was not the proximate cause of the DeBartolo Plaintiffs' losses. We agree. There is no evidence that the financial statements would have been materially different, assuming that a GAAS audit been performed in those years. Thus, the DeBartolo Plaintiffs would have purchased the stock at the same price that they did and would have eventually suffered the same losses.

In reaching this conclusion, we first conclude that there is no clear and convincing evidence that the DeBartolo Plaintiffs would not have made these purchases of Phar–Mor stock had Coopers performed GAAS audits in 1984, 1985 and 1986. The fact that a GAAS audit may have "inherent value," or that the performance of a GAAS audit was material to the DeBartolo Plaintiffs is irrelevant to the causation issue, absent a showing that the performance of a GAAS audit would have materially altered the information available to the DeBartolo Plaintiffs when they made the purchases. The record is devoid of clear and convincing evidence in this regard.

Second, we hold that there is no clear and convincing evidence that the audit deficiencies of Coopers in 1984, 1985 and 1986 caused the losses suffered by the DeBartolo Plaintiffs as a result of the fraud that began in fiscal year 1987. In 1984, Coopers was hired by Phar–Mor to perform a GAAS audit on the fiscal year 1984 financial statements and to render an opinion concerning whether such statements accurately reflected the financial condition of the company. The 1984 audit was neither designed nor intended to provide assurances with respect to the accuracy and reliability of future financial statements. The same holds true for fiscal years 1985 and 1986. Therefore, it would constitute an unwarranted stretch of proximate causation to hold that the losses from the 1985 and 1986 purchases are attributable to pre-fraud audit failures, and we will not so hold.

In the end, the losses suffered by the DeBartolo Plaintiffs on their early year purchases were caused by the financial fraud and Coopers' post–1986 audit failures. The DeBartolo Plaintiffs, however, have attempted to pin at least part of the blame for their early year losses on Coopers' actions in 1984–1986, apparently in response to a prior ruling of this court that prohibits direct claims by shareholders for losses suffered as a result of the diminution in the value of their shares. *See Trio v. Coopers & Lybrand,* 900 F.Supp. 777, 781–82 (August 31, 1994). In that opinion, we held that, under Pennsylvania law, the losses incurred by a shareholder as a result of the diminution in share value constitutes an injury to the corporation, and cannot be brought directly by the shareholder. The same rule applies here in the absence of clear and convincing evidence that the DeBartolo

Plaintiffs would not have suffered losses on their early year purchases had Coopers performed a GAAS audit. Judgment as a matter of law will be entered for Coopers on the claims on the verdict slip of the DeBartolo Plaintiffs at No. II, 1, 2, and 3.

The DeBartolo Plaintiffs have presented sufficient evidence, which the jury saw fit to credit, to establish their remaining state law claims by clear and convincing evidence. Although the issue was hotly contested at trial, we are not privileged to weigh the evidence and we cannot overturn the verdict of the jury merely because we may have found otherwise. Rather, in resolving a motion for judgment as a matter of law, we must search the record to determine whether the DeBartolo Plaintiffs have satisfied the burden imposed by Pennsylvania law in a tort action for fraud or deceit.

■ We conclude that there is sufficient evidence, which satisfies the clear and convincing standard, that the financial statements materially misstated the financial condition of Phar–Mor in 1987 and thereafter; Coopers recklessly represented that it had performed GAAS audits; Coopers issued clean audit opinions during a period of time in which officials of Phar–Mor were substantially over-stating the inventory of the company; Coopers would have discovered the fraud if it had performed the audits in accordance with generally accepted auditing standards; Coopers was reckless in performing the audits and in issuing audit reports and opinions; the DeBartolo Plaintiffs justifiably relied on the audit opinions of Coopers; and that the material misrepresentations were a substantial factor in causing the losses which were sustained by these Plaintiffs. Coopers' motion for judgment as a matter of law will be denied with respect to the findings of the jury at DeBartolo Interrogatory No. II, 4–27.

Coopers' motion for a new trial in which it assails the evidentiary rulings of the court is without merit. First, the trial court properly admitted the Cherelstein transcript under Fed.R.Evid. 806 after making appropriate findings, and there was neither error nor prejudice to Coopers by the manner in which Sears' counsel made use of the transcript during closing argument. Second, the court properly limited the cross-examination of Edward Brennan by restricting the evidence of management fraud at the American United Way while Brennan was Chairman. The evidence was irrelevant to the Phar–Mor fraud and Coopers presented lay and expert witnesses who testified that a GAAS audit will not necessarily detect collusive management fraud, and the reliance of the DeBartolo Plaintiffs was explored at length by defendants. Third, the issue of the alleged fear and intimidation of the employees of Phar–Mor was properly excluded by the court after appropriate findings under Rules 401–403. The evidence was irrelevant and prejudicial to the DeBartolo Plaintiffs, and Coopers developed the issue concerning the attempt to deceive Coopers, and the cover-up of the fraud by employees of Phar–Mor through the testimony of Patrick Finn, and others.

Third, the cross-examination of Greg Finerty was properly managed by the trial court. The court sustained timely objections by Coopers and instructed the jury to disregard the questions of Attorney Dawson. In light of Finerty's testimony that Coopers was seeking the business of the Colorado Rockies, and the exclusion of the proffered evidence concerning the Silverado investigation, Coopers suffered no prejudice when the issue is viewed in a larger context. The court's response to the jury's question concerning a possible SEC investigation was helpful to Coopers and properly put the Denver office issue to rest. And fourth, the court properly permitted examination of Finerty concerning knowledge of the personal tax returns of Mickey Monus because there may have been particularized need to investigate in light of Finerty's position as audit partner, his relationship with Roman and Monus, and the related evidence of record. We have given serious consideration to the remaining contentions of defendants and find them without merit. Coopers' motion for a new trial will be denied.

■ We will now address the question of damages in order to assist the parties in their preparations for the trial on damages. First, we are mindful that federal and state law provides several ways to measure damages for claims based on Rule 10b–5 and

fraud under Pennsylvania law. Second, the Court of Appeals has instructed that, as a general rule, the out-of-pocket rule is the proper measure of damages under Rule 10b–5, and we will apply the rule in the federal and state law claims. Third, the out-of-pocket rule of damages for losses sustained following the purchase of stock is the price paid less the actual value of the stock on the date of the *initial* purchase, and we will apply it here. Fourth, out-of-pocket damages do not include loss of rent or future income under federal or state law, and will not be considered in the trial on damages for the reasons which will be explained hereafter. Fifth, out-of-pocket damages include real estate taxes, maintenance expenses, bankruptcy expenses and possibly reconfiguration costs. Such items will be discussed at length by the court, after consultation with counsel, prior to commencement of the trial on damages.

With respect to the DeBartolo Plaintiffs' Rule 10b–5 claims, we will follow the general rule and apply the out-of-pocket rule of damages. *See e.g., Sowell v. Butcher & Singer, Inc.,* 926 F.2d 289, 297 (3d Cir.1991). In addition, we hold that the benefit of the bargain rule of damages is inapplicable where, as here, the defendant was not a party to the underlying agreement. Restatement (Second) of Torts § 549, cmt. g.

█ Section 549 provides that the recipient of a fraudulent misrepresentation may recover either out of pocket damages or "damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty." Out of pocket damages are generally measured by the difference between the purchase price of the property and its actual value. *Kaufman,* 366 F.2d at 331; *Neuman,* 51 A.2d at 766. Benefit of the bargain damages are measured by the difference between the represented value of the property purchased and its actual value. *Tilghman v. Dollenberg,* 418 Pa. 604, 213 A.2d 324, 326 (1965).

As the language "contract with the maker" suggests, comment g to section 549 of the Restatement limits benefit of the bargain damages to the situation where the plaintiff has made a bargain with the defendant. "When the plaintiff has not entered into any transaction with the defendant but has suffered his pecuniary loss through reliance upon the misrepresentation in dealing with a third person, [the out of pocket rule] must of necessity be applied." The Reporter's Note to comment g further explains, "[w]hen the plaintiff is induced to enter into a transaction with a third person, rather than with the defendant, the out-of-pocket rule must be applied." *See Ago v. Begg, Inc.,* 705 F.Supp. 613, 615 (D.D.C.1988), *aff'd* 911 F.2d 819 (D.C.Cir.1990); *Scholz Homes, Inc. v. Wallace,* 590 F.2d 860, 864 (10th Cir.1979); *Citizens State Bank v. Shearson Lehman Bros., Inc.,* 874 F.Supp. 307, 309 (D.Kan.1994); *Elliott v. Aspen Brokers, Ltd.,* 811 F.Supp. 586, 591 (D.Colo.1993); *Gold v. Dubish,* 193 Ill. App.3d 339, 140 Ill.Dec. 9, 15–16, 549 N.E.2d 660, 666–67 (1989); *Sorensen v. Gardner,* 215 Or. 255, 334 P.2d 471, 476 (1959); *Selman v. Shirley,* 161 Or. 582, 85 P.2d 384, 392 (1938); *MacDonald v. Roeth,* 179 Cal. 194, 176 P. 38, 40–41 (1918).

Where the plaintiff has made a bargain with the defendant, benefit of the bargain damages are recoverable because the fraudulent representations also constitute a warranty. Because a broken promise alone would allow benefit of the bargain damages, "[t]he addition of the element of deceit cannot deprive the injured person of the rights which would be his if this element were lacking, and if the representation on which he relied were a warranty and nothing more." *Selman,* 85 P.2d at 392. Moreover, allowing the plaintiff only out of pocket damages where the purchase price was equal to or less than its actual value, "would afford a protection to the party who had broken, at the expense of the party who was ready to abide by, the terms of the contract." *Id.* (citing Sutherland on Damages (4th ed.) § 1172).

█ In contrast, where the person charged with fraudulent misrepresentation is not a party to the transaction, there is no warranty and no advantage that would inure to the wrongdoer. *Sorensen,* 334 P.2d at 476. Applying this distinction to the instant case, we hold that the DeBartolo Plaintiffs cannot recover benefit of the bargain damages because Coopers was not a party to the agreements between Plaintiffs and Phar–

Mor. The DeBartolo Plaintiffs had no bargain with Coopers to the benefit of which they are entitled.

■ Although no court has directly considered this distinction in the context of a federal securities law claim, common law fraud concepts underlie the securities laws and provide guidance as to their reach and interpretation. *Harris v. American Inv. Co.*, 523 F.2d 220, 224 (8th Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976). Indeed, the out of pocket measure of damages employed by federal courts in cases under § 10b and Rule 10b–5 is borrowed from the tort action of deceit. *Id.* at 224–25. The rationale for limiting benefit of the bargain damages to the situation where the plaintiff has made a bargain with the defendant applies equally to federal securities laws claims as it does to common law tort claims. Moreover, the Court of Appeals has observed that in Rule 10b–5 cases, other courts "have been unanimous in limiting damages to [out of pocket losses] in all cases except those where the defendant was a broker-dealer or the plaintiff and defendant were in privity." *Scattergood v. Perelman*, 945 F.2d 618, 624 n. 2 (3d Cir.1991). We therefore hold that in a Rule 10b–5 action a plaintiff cannot recover benefit of the bargain damages from a defendant who was not a party to the underlying agreement.

Pennsylvania law appears to apply this distinction, and the Supreme Court has cited section 549 with approval. *Scaife Co. v. Rockwell–Standard Corp.*, 446 Pa. 280, 285 A.2d 451, 457 (1971), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972); *see also Sharp v. Coopers & Lybrand*, 83 F.R.D. 343, 348 n. 10 (E.D.Pa.1979), *aff'd*, 649 F.2d 175 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *Silverman v. Bell Sav. & Loan Ass'n*, 367 Pa.Super. 464, 533 A.2d 110, 116 (1987). The Pennsylvania Supreme Court has held that "[i]n an action for deceit or fraud in Pennsylvania, a plaintiff can recover only 'his actual loss' and not 'the value of his bargain.'" *Neuman*, 51 A.2d at 766; *see also Kaufman*, 366 F.2d at 331; *Tilghman*, 213 A.2d at 326; *Peters v. Stroudsburg Trust Co.*, 348 Pa. 451, 35 A.2d 341, 343 (1944). "Actual loss" is

generally defined as the difference between the actual value of the property at the time of the transaction and its purchase price. *Neuman*, 51 A.2d at 766.

Despite this clear rule, some Pennsylvania courts have awarded plaintiffs lost profits, losses and expenses, after stating that a plaintiff can recover only "his actual loss" in fraud actions. In *Scaife Co. v. Rockwell–Standard Corp.*, the Pennsylvania Supreme Court determined that the plaintiff's losses and expenses should be included in assessing damages because they were the proximate result of the fraud. *Scaife*, 285 A.2d 451, 457 (citing Restatement of Torts § 549 (1938)). Moreover, the Pennsylvania Superior Court has held that lost profits are recoverable in tort cases if they are established with reasonable certainty, and the evidence shows that they were the proximate consequences of the wrong. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1257 (1983). And in *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 735–38 (3d Cir.1991), the Court of Appeals relied on *Delahanty* to award lost profits in a fraud action.

It must be emphasized, however, that the Pennsylvania cases which have allowed benefit of the bargain type damages do not involve claims against defendants who were not parties to the underlying agreement. The only exception, *Aiello v. Ed Saxe Real Estate, Inc.*, 327 Pa.Super. 429, 476 A.2d 27, 33 (1984), *rev'd on other grounds*, 508 Pa. 553, 499 A.2d 282 (1985), permitted a real estate purchaser to recover benefit of the bargain damages against the broker and agent in a fraudulent misrepresentation action. However, this case is not helpful because it is analogous to recovery against a broker-dealer in the securities law context, which the Court of Appeals has recognized as an exception to the out of pocket loss limitation. *Scattergood*, 945 F.2d at 624 n. 2.

The DeBartolo Plaintiffs assert that benefit of the bargain damages were awarded against company officers in *Killian v. McCulloch*, 850 F.Supp. 1239, 1249–50 (E.D.Pa.1994), who were not parties to the agreement between the plaintiffs and the corporation. However, the breach of con-

tract claim survived dismissal because the district court found that the plaintiffs had pled sufficient facts to pierce the corporate veil. *Id.* at 1250. Because the plaintiffs had stated a sufficient claim to disregard the corporate form, the officers of the company were the actual parties to the agreement. Hence, *Killian* does not support the position of Plaintiffs.

We have found no Pennsylvania case in which the limitation set forth in comment g to section 549 of the Restatement has been rejected, and the language in *Delahanty* supports a strict interpretation of benefit of the bargain type damages. In particular, the court stated that the Pennsylvania courts are reluctant to award lost profits, and that "this kind of damage is usually seen in the context of a breach of contract." *Delahanty*, 464 A.2d at 1258. We hold that the Pennsylvania Supreme Court would adopt comment go to section 549 of the Restatement of Torts and restrict recovery of actual damages for fraud against a third party to out-of-pocket losses.

We also note that it is within our discretion to fashion the remedy in a Rule 10b–5 action to do equity in the circumstances of this case. "It is for the district judge, after becoming aware of the nature of the case, to determine the appropriate measure of damages in the first instance." *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The court's function in determining the appropriate remedy in a Rule 10b–5 action is "to fashion the remedy best suited to the harm." *Nye v. Blyth, Eastman, Dillon & Co.*, 588 F.2d 1189, 1198 (8th Cir.1978). *See also Sowell*, 926 F.2d at 297 (noting that "damages may be measured in several ways"); *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 516 (3d Cir.), *cert. denied*, 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971).

Similarly, Pennsylvania law allows the trial court to apply a measure of damages to suit the facts of the case. In *Neuman*, the Pennsylvania Supreme Court observed that, "[w]hile formulated rules relating to the appropriate measure of damages in varying circumstances have to some extent become fixed, they are by no means immutable but bend to the exigencies of the particular case

in order that just compensation may be ascertained and awarded." *Neuman*, 51 A.2d at 766. Accordingly, we hold that the DeBartolo Plaintiffs are limited to recovering their out-of-pocket losses in their Rule 10b–5 and common law fraud claims against Coopers.

Our conclusion is grounded on several factors. First, the Court of Appeals has held that, while damages may be measured in several ways in Rule 10b–5 and fraud cases, "[t]he proper measure of damages to reflect the loss proximately caused by the defendants' deceit is the out-of-pocket rule. That rule is the traditional measure of damages in a Rule 10b–5 action." *Sowell*, 926 F.2d at 297. Second, Coopers was not a party to the lease agreements between the DeBartolo Plaintiffs and Phar–Mor. Third, damages should be limited to an amount that will make a plaintiff whole, under these circumstances. Fourth, section 28(a) of the Securities Act and state law limit a plaintiff's recovery to actual damages. Fifth, Coopers received little or no direct benefit from the transactions. Sixth, Coopers will be neither unjustly enriched nor shielded from appreciable liability to the defrauded investors. And seventh, the goals of the federal securities laws and Pennsylvania common law will be preserved.

Applying the out-of-pocket rule, the Court of Appeals has measured Rule 10b–5 damages as the difference between what the defrauded buyer paid for the stock and what he/she would have paid had there been no fraudulent conduct. *Sharp*, 649 F.2d at 190, citing *Huddleston*, 640 F.2d at 554–55. The value of a security absent the fraud is its fair market value at the time of the *initial* purchase. *Huddleston*, 640 F.2d at 556. The DeBartolo Plaintiffs urge us to depart from this rule and measure their damages at the date of discovery of the fraud, rather than the date of the transaction. We decline to do so.

In support of their argument, the DeBartolo Plaintiffs rely on comment c to section 549 of the Restatement (Second) of Torts, and cases that apply its reasoning. Comment c observes that the value of an article transferred in connection with a misrepre-

sentation may be difficult to ascertain where the misrepresentation affects the market price of the article. If others are influenced by the same misrepresentations, an artificial market is created, and "[i]t is not until the existence of the fraudulent conduct is known that the true value of the securities can be ascertained." *Esplin v. Hirschi*, 402 F.2d 94, 104–05 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1979); *see also Harris*, 523 F.2d at 224–27; Restatement (Second) of Torts § 548A.

However, the cases relied upon by the DeBartolo Plaintiffs are distinguishable from the instant case. In those cases, subsequent changes in financial or business conditions, in conjunction with the falsity of the misrepresentation caused the post-investment decline in the value of the security. In contrast, Coopers' conduct in this case constituted a series of distinct misrepresentations that occurred each time Coopers issued a clean audit opinion. The value of the securities declined each year that Coopers recklessly stated that it had performed a GAAS audit.

When the DeBartolo Plaintiffs purchased Phar–Mor stock, they relied on Coopers' audit statements for that year and previous years. They could not rely on audit statements for future years. Accordingly, the misrepresentations that caused the decline in the value of the shares occurred *after* the DeBartolo Plaintiffs purchased the securities. In *Trio*, we held that shareholders have no direct cause of action for the diminution in the value of their shares. *Trio v. Coopers & Lybrand*, 900 F.Supp. 777, 781–82 (August 31, 1994). Because the value in the DeBartolo Plaintiffs' shares declined after they became shareholders, the cause of action inured to Phar–Mor, Inc. *Id.* We therefore hold that the DeBartolo Plaintiffs' measure of damages on their Rule 10b–5 claims is the price paid less the actual value of the stock on the date of the *initial* purchase.

Finally, we disagree with the DeBartolo Plaintiffs that their damages include lost future rents. Although "actual loss" under Pennsylvania law may include such benefit of the bargain type damages, *see Delahanty*, 464 A.2d at 1257, as we have concluded, the DeBartolo Plaintiffs are limited to recovery of their out of pocket losses from Coopers in this non-privity situation.

An appropriate order will follow denying the motion of Coopers for a new trial and granting the motion for judgment as a matter of law in part.

## ORDER OF COURT

AND NOW, this 11th day of June 1996, in accordance with the accompanying opinion,

IT IS ORDERED that the motion of Coopers & Lybrand, and a class of partners and principals of the firm, for judgment as a matter of law be and hereby is granted with respect to the claims of the DeBartolo Plaintiffs set forth at No. II, 1, 2 and 3 of the DeBartolo Plaintiffs Interrogatories to Jury, and based on the audited financial statements for the years 1984, 1985 and 1986.

IT IS FURTHER ORDERED that the motion of Coopers & Lybrand, and a class of partners and principals of the firm, for judgment as a matter of law be and hereby is denied with respect to the claims of the DeBartolo Plaintiffs set forth at No I, 1 and 2, and No. II, 4–27 of the DeBartolo Plaintiffs Interrogatories to Jury.

IT IS FURTHER ORDERED that the motion of Coopers & Lybrand, and a class of partners and principals of the firm, for a new trial be and hereby is denied.