Monnie J. **ELLIOTT, Plaintiff,**

v.

The **ASPEN BROKERS, LTD., Defendants.**

No. 91–K–2096.

United States District Court, D. Colorado.

Jan. 21, 1993.

George M. Allen, Aspen, CO, for plaintiff.

Paul D. Cooper, Daniel R. McCune, Cooper & Kelley, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This matter is before me on six pending motions: (1) Defendant Aspen Brokers,

Ltd.'s motion in limine to prevent Plaintiff Monnie Elliott from introducing evidence of Caroline Christensen's sexual activities, (2) Aspen Brokers' motion in limine to prevent Elliott from using the deposition of Caroline Christensen for any purpose at trial, (3) Aspen Brokers' motion in limine regarding character evidence, hearsay evidence and use of first names, (4) Aspen Brokers' motion for determination of Elliott's election of remedies, (5) Aspen Brokers' motion in limine to preclude Elliott from introducing evidence of lost profits, and (6) Aspen Brokers' motion in limine regarding Elliott's damage claim. Elliott's emergency motion to shorten time for response to interrogatories to Aspen Brokers regarding insurance coverage and potential dissolution of the firm was withdrawn.

## I. *Background.*

This diversity case arises out of a failed real estate transaction. On April 20, 1989, Plaintiff Monnie Elliott (nee Monnie Schaefer) entered into a contract with Tony Mazza and Frank Woods to purchase their option to buy the Bell Mountain Lodge in Aspen, Colorado for $600,000. She made a $200,000 earnest money deposit, signing a note for the remaining $400,000. (Mazza and Woods had previously contracted to buy the lodge from its owner, Victor Kappeli, for $1,900,000.) The total purchase price for the lodge was $2,500,000.

The lodge was listed for sale with Defendant Aspen Brokers, Ltd. Before Elliott contracted to purchase the option, Caroline Christensen, an agent with Aspen Brokers, provided her with written information indicating that the lodge contained 26 units. Elliott also made a visual inspection of the exterior of the lodge, which likewise indicated it contained 26 units. Elliott told Christensen that she planned to redevelop the property into 22 units. Aspen has very restrictive growth management laws which discourage the construction of new lodging units. As a result, the primary value of the lodge was in its potential for redevelopment.

According to Elliott, Mazza, Woods and Christensen prevented her from performing normal due diligence on the property. She was told not make inquiries of the owner, Kappeli, because Mazza and Woods allegedly were concerned that she might strike a separate deal with him. In addition, she was asked to not contact the planning office of the City of Aspen. Elliott was told that Mazza and Woods did not want her to contact the City because they were concerned that if the City knew of Elliott's plans to redevelop the lodge, their application to rezone the property for a commercial development might be compromised.

Before closing, on August 29, 1989, Elliott learned that the lodge contained only 16 units, not 26, rendering her plans for a 22-unit development unfeasible. Because of this discrepancy, the sale of the lodge was not consummated. Elliott has been unable to recover her $200,000 earnest money deposit from Mazza and Woods, and has sued them separately in state court for rescission of the option contract and return of her earnest money deposit. On November 29, 1991, she commenced this lawsuit against Aspen Brokers, asserting that its agent, Christensen, fraudulently and negligently misrepresented the number of units in the lodge.

## II. *Pending Motions.*

### A. Motion in Limine re: Christensen's Sexual Activities.

In this motion, Aspen Brokers seeks to prevent Elliott from introducing evidence that Christensen, the broker in this transaction, and Tony Mazza, one of the holders of the option to purchase the lodge, were romantically involved and had engaged in sexual relations. Aspen Brokers argues that this evidence should be precluded under Fed.R.Evid. 402 and 403 because "[t]he only purpose such evidence would serve would be to offend the morals of the jury in hopes of prejudicing Defendant's case." (Mot. Limine at 2.) Furthermore, the company contends that even if evidence of Mazza and Christensen's close personal relationship is relevant, the fact that they were having sexual relations is not.

Elliott responds that this information is relevant because she would have been much more skeptical of the information Christensen had provided had she known that Christensen and Mazza were intimately involved. Elliott represents that she has no intention of introducing this evidence solely to embarrass Christensen or Mazza.

Under Rule 402, relevant evidence is admissible; irrelevant evidence is not. Rule 403 permits the court to exclude evidence when its probative value is outweighed by its prejudicial effect. The admission or exclusion of evidence on relevancy grounds is a matter of discretion. *See United States v. Harrison*, 942 F.2d 751, 759 (10th Cir. 1991).

The fact that Christensen and Mazza were romantically involved is relevant evidence, but the fact or extent of their sexual relations is not. Here, Christensen and Mazza's personal relationship makes it more likely that Christensen knew that the lodge contained only 16 units, as stated in Mazza and Woods' application before the City of Aspen, instead of the 26 represented in materials provided by Aspen Brokers. Christensen would have also been more likely to take steps to prevent Elliott from learning this to assist Mazza. Christensen's knowledge of the true number of units in the lodge is essential to Elliott's claim for fraudulent misrepresentation. Thus, evidence of the relationship between Christensen and Mazza is relevant.

■ On the other hand, the fact that the couple had sexual relations does not add much to the calculation. Christensen's potential allegiance to Mazza can easily be inferred by evidence that they were romantically involved. Further scrutiny as to the physical aspects of their relationship is unnecessary and not particularly probative. Therefore, I deny Aspen Brokers' motion in limine as to evidence of the couple's romantic involvement, but limit Elliott from delving into issues regarding sexual relations.

B. Motion in Limine re: Use of Christensen's Deposition.

■ This motion centers on the March 1991 deposition of Caroline Christensen taken by George Allen, counsel for Elliott. In October, 1990, several months before the deposition took place, Allen met with Christensen at the office of Aspen Brokers. Allen represented to Christensen that he was a friend of Elliott's, that he also was an attorney, but that he was not then representing Elliott. He asked Christensen a number of questions about the failed Bell Mountain Lodge transaction, sending Christensen a summary of his notes. Later, acting as Elliott's attorney, he took Christensen's deposition in connection with Elliott's state law action against Mazza and Woods in March of 1991. Aspen Brokers argues that use of the deposition at trial should be prohibited because Allen did not inform Christensen that she was the target of Elliott's claims and Allen failed to inform her of her right to be represented by counsel in violation of DR 7–104 of the Colorado Code of Professional Responsibility.

I disagree with Aspen Brokers' characterization of the facts. Aspen Brokers' primary contention is that Christensen was "ambushed" by Allen because he did not inform her that she was the focus of Elliott's misrepresentation claims in the state court action against Mazza and Woods. This is misleading. Ms. Christensen was not a defendant in the state court action. (There is indication in the record, however, that Elliott may have amended her complaint to add Christensen after the events in question.) Christensen's name appears only once in that complaint, and the allegations do not concern her activities. This lawsuit, which does focus on Christensen's actions, was not filed until November 1991, more than a year after the deposition was taken.

■ Moreover, Allen did not violate DR 7–104 when he interviewed Christensen and later took her deposition. This rule prohibits an attorney during the course of his representation of a client from contacting a party about the case without first obtaining permission from the party's attorney. Code of Professional Responsibility DR 7–104(A)(1) (Colo.1993). It also prohibits an attorney from giving advice to a person not

represented by an attorney whose interests are possibly adverse to those of his client, except advice to secure counsel. *Id.* DR 7-104(A)(2). Christensen was not a party to the state court litigation; therefore, the first section of the rule does not apply. Likewise, since Allen did not give advice to Christensen during his informal interview with her or during the deposition, he did not violate the second section of the rule. I find no indication of misconduct by Allen. Therefore, I deny Aspen Brokers' motion in limine regarding use of Christensen's deposition.

C. *Motion in Limine re: Character Evidence, Hearsay and Use of First Names.*

Aspen Brokers makes three requests in this motion in limine. First, Aspen Brokers requests me to preclude Elliott from introducing evidence that Mazza allegedly derived his wealth from drug trafficking activities. Aspen Brokers relies on Federal Rule of Evidence 608, which permits the credibility of a witness to be attacked by opinion or reputation evidence, but only if that evidence goes to the witness' character for truthfulness. Fed.R.Evid. 608(a). This rule also prohibits the introduction of extrinsic evidence to show misconduct not resulting in conviction. Fed.R.Evid. 608(b).

■ Courts generally agree that a witness' past drug activity is not probative of his character for truthfulness and routinely exclude evidence introduced for this purpose. *See, e.g., United States v. McDonald,* 905 F.2d 871, 875 (5th Cir.) (drug usage not probative of truthfulness), *cert. denied,* — U.S. ——, 111 S.Ct. 566, 112 L.Ed.2d 572 (1990); *United States v. Dickens,* 775 F.2d 1056, 1058 (9th Cir.1985) (defendant's association with drug trafficking "mob" did not bear on his truthfulness). If such evidence is offered on this basis, it will be excluded.

Aspen Brokers' second request in this motion in limine is to prevent the introduction of hearsay evidence regarding the lodge's appraised value and Elliott's conversations with members of the planning office of the City of Aspen. This evidence goes to the issue of lost profits. As I will explain below in connection with Aspen Brokers' motion for election of remedies, Elliott cannot properly claim lost profits in this lawsuit. Therefore, this portion of the motion is moot.

Aspen Brokers' final request in this motion in limine is that I advise counsel not to refer to the parties by their first names during trial. I so advise. I hope they don't because to do so is very tacky.

D. Motion for Determination of Elliott's Election of Remedies.

This is one of three motions by Aspen Brokers dealing with the issue of damages. Aspen Brokers moves for a determination as to Elliott's election of remedies. Aspen Brokers notes that Elliott has requested damages in the amount of her earnest money deposit, indemnification for any future liability to Mazza and Woods or Bell Mountain Lodge, and certain incidental costs, such as architectural fees spent for plans for redeveloping the lodge. These items, Aspen Brokers contends, are rescission damages. Elliott also seeks to recover the profits she would have made had she redeveloped the lodge. Aspen Brokers argues that lost profits are damages on the contract and cannot be recovered unless Elliott elects to sue on the contract. Thus, Aspen Brokers requests me to require Elliott to select between suing on the contract and rescission.

■ Although Aspen Brokers has framed this as an election of remedies issue under contract law, this is not a contract action. The question is what damages are available to Elliott in tort. Here, Elliott asserts two different tort claims: one for fraudulent misrepresentation and one for negligent misrepresentation. Colorado applies the Restatement (Second) of Torts with respect to damages for these torts. *See Western Cities Broadcasting v. Schueller,* 830 P.2d 1074, 1077–78 (Colo. App.1992) (applying Restatement § 552B as to damages for negligent misrepresentation); *Harrison v. Smith,* 821 P.2d 832, 834 (Colo.App.1991) (applying Restatement § 549 as to damages for fraudulent misrep-

resentation). Under the Restatement, on a claim for fraudulent misrepresentation, the plaintiff may recover the difference between the value of the property as represented and the value of the property actually received (i.e. "benefit-of-the-bargain damages"), plus any out-of-pocket expenses. Restatement (Second) of Torts § 549 (1976); *Harrison v. Smith*, 821 P.2d at 834. In addition, Colorado law permits the award of exemplary damages on a fraudulent misrepresentation claim. *See* Colo.Rev.Stat. § 13–21–102(1) (1987). In contrast, on a claim for negligent misrepresentation, the plaintiff may recover only the difference between the price paid for the property and the value actually received. Restatement, *supra*, § 552B; *Harrison v. Smith*, 821 P.2d at 834. Damages for lost profits are not available. *Rosales v. AT & T Info. Sys., Inc.*, 702 F.Supp. 1489, 1501 (D.Colo.1988).

■ Because she has alleged a claim for fraudulent misrepresentation, in theory, Elliott may properly claim damages for lost profits. There are some situations, however, in which the plaintiff may not recover benefit-of-the-bargain damages, including lost profits, on a fraudulent misrepresentation claim. A party who has been fraudulently induced to enter a contract can choose to affirm the contract and seek damages as described above, or rescind the contract and tender back what she received. *Ackmann v. Merchants Mortgage & Trust Corp.*, 659 P.2d 697, 701 (Colo. App.1982), *rev'd on other grounds sub. nom., Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599 (Colo.1984). If the plaintiff elects rescission, rather than ratification, benefit-of-the-bargain damages are not available and the plaintiff may recover only his out-of-pocket expenses. *Rice v. Hilty*, 38 Colo.App. 338, 559 P.2d 725, 727 (1976).

■ Similarly, if the plaintiff does not actually complete the transaction or if he seeks damages for misrepresentation from a defendant not a party to the transaction, the plaintiff may recover only his pecuniary loss. *See* Restatement, *supra*, § 549 cmt. g (damages limited to out-of-pocket loss "[w]hen the plaintiff has not entered into any transaction with the defendant but has suffered his pecuniary loss through reliance upon the misrepresentation in dealing with a third person"); *Gold v. Dubish*, 193 Ill.App.3d 339, 140 Ill.Dec. 9, 15–16, 549 N.E.2d 660, 666–67 (1989) (in jurisdiction applying same rules for measuring damages, plaintiff may not recover lost profits where "defendants' alleged fraudulent misrepresentations did not ultimately induce plaintiff to consummate the bargain"). Out-of-pocket expenses do not include lost profits. *Cornell v. Wunschel*, 408 N.W.2d 369, 382 (Iowa 1987) (where out-of-pocket loss is measure of damages on fraudulent misrepresentation claim, lost profits may not be recovered); *cf. Ringsby v. Timpte*, 105 Colo. 356, 98 P.2d 287, 289 (1939) (lost future damages cannot be recovered in action for fraud).

■ In this case, Elliott was not induced by the fraudulent misrepresentations to consummate the transaction because she discovered the fraud before closing. She has never attempted to affirm the contract. In fact, in her state law action against Mazza and Woods, she specifically seeks return of her earnest money deposit and rescission. Because the transaction was never consummated and Elliott seeks damages in this suit from Aspen Brokers, not Mazza and Woods, Elliott may not recover benefit-of-the-bargain damages in this lawsuit, only her out-of-pocket expenses. Her claim for lost future profits is not cognizable. Thus, while Aspen Brokers' request for an "election of remedies" is a misnomer, I grant the motion to the extent it requests that Elliott's claim for lost profits be dismissed.

E. Motion in Limine re: Evidence of Lost Profits.

In this motion, Aspen Brokers seeks dismissal of Elliott's claim for lost profits on different grounds, based on counsel's earlier representation to forego this claim. By letter dated October 8, 1992, Allen, Elliott's attorney, informed defendant's counsel that "[w]e have decided to forego seeking lost profits in the Federal litigation."

(Mot. Limine, Ex. A.) Daniel McCune, Aspen Brokers' attorney, responded in a letter dated October 12, 1992 that he would modify his trial preparation in response to Elliott's abandonment of the lost profits claim. (*Id.*, Ex. B.) Then, on October 27, 1992, Allen wrote to advise defendant's counsel that, despite his earlier statement, "we have come to the conclusion that the line of authority cited by Dan [McCune] to us is inapposite to our situation, as a consequence of which our prior advice that we would not seek lost profits from your client is no longer operative." Aspen Brokers now seeks to enforce Allen's earlier agreement to abandon the lost profits claim.

As I explained above, Elliott may not seek lost profits in this action because she did not perform on the contract and did not take title to the property. Accordingly, this motion is moot.

### F. Motion in Limine re: Elliott's Damage Claim.

Aspen Brokers next seeks dismissal of Elliott's claim for indemnification. In her complaint, Elliott seeks as compensatory damages not only for her $200,000 earnest money deposit and professional fees, but "payment of such other sums as she may ultimately be required to pay [Mazza and Woods], such as the amount due on the $400,000 note to them or indemnification by [Aspen Brokers] against the claims of any holder of the note, as well as indemnification against any claims by Bell Mountain Lodge, Inc." (Compl. ¶ 18.) Aspen Brokers argues that Elliott cannot recover from it amounts due on the $400,000 note because she has sought rescission of her obligations under the note in the state court action against Mazza and Woods. Thus, it contends, any such damages are speculative and would amount to a double recovery. Elliott responds that she is not seeking to recover amounts that may be owed in the future, but indemnification for any liability to Woods, Mazza or Bell Mountain Lodge, Inc. These damages, she argues, are not speculative.

█ The question presented by this motion is whether Elliott may request indemnification for potential future liability as a proper element of compensatory damages. Neither party has provided any relevant authority on this question, and I have found none myself. Given my discussion above, however, logic dictates that the claim for future damages and indemnification should be treated the same as the claim for lost profits. Elliott is entitled to recover only her out-of-pocket expenses in this lawsuit (plus, in the court's discretion, exemplary damages). Since there is no evidence that she has made any payments to Mazza and Woods or Kappeli since backing out of the transaction to buy the lodge, she cannot obtain indemnification from Aspen Brokers for payments never made, though conceivably due in the future. This claim is simply too speculative in a case where the underlying transaction was never consummated. I grant this motion.

Accordingly, IT IS ORDERED THAT:

(1) Aspen Brokers' motion in limine to prevent Plaintiff Monnie Elliott from introducing evidence of Caroline Christensen's relationship with Mazza is DENIED except as to specific evidence of sexual relations;

(2) Aspen Brokers' motion in limine to prevent introduction of Caroline Christensen's deposition at trial is DENIED;

(3) Aspen Brokers' motion in limine regarding character evidence relating to Mazza's drug activities is GRANTED;

(4) Aspen Brokers' motion in limine regarding hearsay evidence concerning lost profits is DENIED as moot;

(5) Aspen Brokers' motion in limine regarding use of first names is ELOIGNED;

(6) Aspen Brokers' motion for determination of Elliott's election of remedies is GRANTED to the extent that Elliott is precluded from seeking lost profits in this lawsuit;

(7) Aspen Brokers' motion in limine regarding evidence of lost profits is DENIED as moot;

(8) Aspen Brokers' motion in limine regarding Elliott's damage claim [for indemnification for future liability] is GRANTED; and

(9) Elliott's emergency motion to shorten time for response to interrogatories is DENIED as moot.