**LIGHTNING LITHO, INC.,**
**Appellant–Plaintiff,**

v.

**DANKA INDUSTRIES, INC., Danka Corporation & Danka Office Imaging Company, Appellees–Defendants.**

No. 71A03–0204–CV–106.

Court of Appeals of Indiana.

Oct. 29, 2002.

---

3. Meridian accepts the fact that a collision occurred. It makes no allegation of fraud.

Patrick J. Hinkle, Patrick J. Hinkle, P.C., Mishawaka, IN, Attorney for Appellant.

Brent E. Inabnit, Jennifer E. Davis, Sopko, Nussbaum & Inabnit, South Bend, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Lightning Litho, Inc. (Litho) contends the trial court erred in granting the defendants' motion for judgment on the evidence on its fraudulent inducement claim. In particular, Litho argues that it presented sufficient evidence to support its request for damages. Because we find that the proper measure of damages in fraudulent inducement cases is the benefit of the bargain rule and that there is evidence in the record to support an award of benefit of the bargain damages, we reverse the trial court.

### Facts and Procedural History

Thomas Haab is the owner of Litho, a small company in South Bend, Indiana that specializes in printing. Danka Industries, Inc. (Danka)[1] supplies office equip-

---

1. Danka Industries, Inc. merged into Danka Corporation. Subsequently, Danka Corporation merged into Danka Office Imaging Com-

ment manufactured by other parties to various businesses throughout the United States. Danka also services and provides supplies for the equipment. During the summer of 1996, Scott Linn, a salesperson at Danka's South Bend office, approached Haab at Litho on numerous occasions about leasing a high-volume copier, which produces 500,000 to 1,000,000 copies per month. Because Litho only had a need for 5000 to 20,000 copies per month and already had an adequate copier for that volume, Haab continually turned down Linn's offer.

In the fall of 1996, Linn approached Haab again and told him that he had an account for him that would warrant leasing a high-volume copier. When Haab asked who the account was, Linn responded that he would not tell him until the lease was signed. However, Linn told Haab that the account would generate six million copies and $50,000 in profit a year. When Haab expressed doubt about the account, Linn responded, "No, it's a done deal. The account is in my back pocket, it goes with the machine." Tr. p. 19. The very next day, Linn returned to Litho with John Leiter, a manager for Danka. When Haab told Leiter that he wanted everything put in writing, Leiter replied, "We can't do that, we checked with corporate, they won't allow us to do that. If Scott Linn says the account goes with the machine, the account goes with the machine." Tr. p. 20. Convinced that the account accompanied the copier, Haab signed a lease with American Business Credit Corporation[2] for a Kodak 3100 copier on Novem-

ber 14, 1996. The terms of the lease were $755 per month for sixty months. Haab also signed an Equipment Maintenance and Supply Annual Agreement with Danka.

Shortly after the copier was delivered to Litho, Linn told Haab that the account was Commercial Driver's Institute (CDI). When Linn and Haab visited CDI, it quickly became apparent that there was no account. Furthermore, Linn was never able to secure a replacement account for Litho. Nevertheless, Litho continued to make lease payments on the copier for nearly two years before finally defaulting.

On April 27, 1999, Litho filed a complaint against Danka, which it amended on June 18, 1999. In its Amended Complaint, Litho alleged, among other things, fraud in the inducement and requested "rescission of the Contract Documents and a return of the parties to the status quo ante." Tr. p. 12. It also requested a jury trial. On January 15, 2001, Danka filed a Motion to Strike Jury Demand asserting that Litho was not entitled to a jury trial because rescission is an equitable remedy that must be tried to the court. The trial court granted the motion. On August 23, 2001, Litho filed a Motion for Leave of Court to File a Second Amended Complaint and Jury Request, which the trial court granted. In its Second Amended Complaint, Litho abandoned its request for rescission of the contract and instead requested "an award of contract and tort damages" in order to obtain a jury trial.[3] Appellees' App. p. 46.

---

pany. All three defendants will be referred to as "Danka."

2. Shortly after this lease was signed, American Business Credit Corporation assigned its interest in the lease to Newcourt Leasing Corporation.

3. Litho also alleged breach of warranty and sought attorney's fees. However, the trial court entered summary judgment against Litho on these claims before trial. Additionally, Litho alleged breach of contract and as part of this claim requested lost profits. However, Litho later "withdrew" its request for lost profits stemming from the breach. Appellees'

This matter proceeded to jury trial on March 19, 2002. At the close of Litho's case-in-chief, Danka moved for judgment on the evidence on Litho's fraudulent inducement claim pursuant to Indiana Trial Rule 50. Specifically, Danka alleged that Litho had failed to present any evidence to support its request for damages. The trial court granted the motion. This appeal ensued.

### Discussion and Decision

■ Litho contends that the trial court erred in granting Danka's motion for judgment on the evidence on its fraudulent inducement claim. Specifically, Litho argues that it presented sufficient evidence to support its request for damages.

■ Motions for judgment on the evidence, which test the sufficiency of the evidence, are governed by Trial Rule 50, which provides in pertinent part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

Ind. Trial Rule 50(A); *see also Faulk v. Northwest Radiologists, P.C.*, 751 N.E.2d 233, 238 (Ind.Ct.App.2001), *trans. denied.* The granting of a motion for judgment on the evidence is a matter committed to the sound discretion of the trial court and will be reversed only if the court has abused its discretion. *City of Terre Haute v. Simpson*, 746 N.E.2d 359, 363 (Ind.Ct.App. 2001), *trans. denied.* On appeal, we em-

ploy the same standard as the trial court. *Id.* We consider the evidence in a light most favorable to the non-moving party. *Id.* Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Id.*

■ Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract. *Circle Ctr. Dev. Co. v. Y/G Ind., L.P.*, 762 N.E.2d 176, 179 (Ind.Ct.App. 2002), *trans. denied.* Generally, a party bringing an action for fraud in the inducement must elect between two remedies. *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 969 (Ind.Ct.App.2000), *reh'g denied, trans. denied; Hart v. Steel Prods., Inc.*, 666 N.E.2d 1270, 1275 (Ind. Ct.App.1996), *reh'g denied, trans. denied.* One alternative is to rescind the contract, return any benefits received, and be returned to the status quo. *Freet*, 725 N.E.2d at 969; *Hart*, 666 N.E.2d at 1275. The other alternative is to affirm the contract, retain the benefits, and seek damages. *Freet*, 725 N.E.2d at 969; *Hart*, 666 N.E.2d at 1275.

■ Here, Litho abandoned its rescission claim when it filed its Second Amended Complaint and has therefore affirmed the contract. When a party elects to affirm a contract induced by fraudulent misrepresentations, the party may only seek tort damages. 7 Corbin on Contracts, *Avoidance and Reformation* § 28.23 (2002); 37 Am.Jur.2d, *Fraud and Deceit* § 279 (2002). In the majority of jurisdictions, these damages are measured using the "benefit of the bargain" rule.[4] 48 Am.

---

App. p. 32, 64. Accordingly, the trial court entered summary judgment against Litho on the lost profits request as well. Litho does not appeal any of these rulings.

4. *See, e.g., Edward J. DeBartolo Corp. v. Coopers & Lybrand*, 928 F.Supp. 557, 565 (W.D.Pa.1996) (applying Pennsylvania law); *Fleet Nat'l Bank v. Anchor Media Television, Inc.*, 831 F.Supp. 16 (D.R.I.1993) (applying

Jur. Proof of Facts 3d, *Fraudulent Inducement* § 17 (1998). This rule compels the party guilty of fraud to make good his or her representations, and under its operation, the parties are placed in the same position as if the contract and representations had been fully performed. 37 Am. Jur.2d, *supra,* § 416; *see also* 48 Am.Jur. Proof of Facts 3d, *supra,* § 17 (providing that this form of relief seeks to give the aggrieved party the benefit of the bargain as if the fraudulent misrepresentations of the other party were true). Although the benefit of the bargain rule is traditionally used to measure damages in breach of contract cases, it is also used to measure damages in fraudulent inducement cases because fraudulent inducement is a "hybrid" of tort and contract. 48 Am.Jur. Proof of Facts 3d, *supra,* § 17.

█ Despite the fact that the majority of jurisdictions use the benefit of the bargain rule when measuring damages in fraudulent inducement or fraudulent misrepresentation cases, there are Indiana cases providing that "[a] buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." *Choung v. Iemma,* 708 N.E.2d 7, 14 (Ind.Ct.App.1999) (quotation omitted),

*reh'g denied; see also Runde v. Vigus Realty, Inc.,* 617 N.E.2d 572, 574 (Ind.Ct. App.1993); *Jordan v. Talaga,* 532 N.E.2d 1174, 1181 (Ind.Ct.App.1989), *reh'g denied, trans. denied; Babson Bros. Co. v. Tipstar Corp.,* 446 N.E.2d 11, 15 (Ind.Ct.App. 1983). However, these cases are inapposite to the present one because the theory of recovery was negligence, not fraudulent inducement, which is a "hybrid" of tort and contract. Moreover, there are other Indiana cases recognizing that the "measure of damages for fraud in the sale or exchange of property is the difference between the value of the property received by the party alleged to have been defrauded and the value of such property at the time, had it been as represented to be by the vender." *Stoll v. Grimm,* 681 N.E.2d 749, 758 (Ind.Ct.App.1997); *see also Johnson v. Naugle,* 557 N.E.2d 1339, 1343 (Ind. Ct.App.1990); *Loer v. Neal,* 127 Ind.App. 246, 137 N.E.2d 728, 737 (1956). Although the courts in these cases do not call this the benefit of the bargain rule, that is essentially what it is. *See* 48 Am.Jur. Proof of Facts 3d, *supra,* § 17 ("Generally, the benefit of the bargain measure of damages is measured as the difference between the value of the property, as represented and the actual value of the proper-

Rhode Island law), *aff'd,* 45 F.3d 546 (1st Cir.1995); *Elliott v. Aspen Brokers, Ltd.,* 811 F.Supp. 586, 590–91 (D.Colo.1993) (applying Colorado law); *Johnny Spradlin Auto Parts, Inc. v. Cochran,* 568 So.2d 738, 744 (Ala. 1990); *Steele v. Vanderslice,* 90 Ariz. 277, 367 P.2d 636, 641 (1961); *Wang v. Massey Chevrolet,* 97 Cal.App.4th 856, 118 Cal.Rptr.2d 770, 780 (2002); *Clark v. Haggard,* 141 Conn. 668, 109 A.2d 358, 361 (1954); *City of Chicago v. Mich. Beach Hous. Coop.,* 297 Ill.App.3d 317, 231 Ill.Dec. 508, 696 N.E.2d 804, 810 (1998); *Midwest Home Distributor, Inc. v. Domco Indus. Ltd.,* 585 N.W.2d 735, 739 (Iowa 1998); *Walker v. Fleming Motor Co.,* 195 Kan. 328, 404 P.2d 929, 932 (1965); *Investors Heritage Life Ins. Co. v. Colson,* 717 S.W.2d 840, 842 (Ky.Ct.App.1986); *Nelson v. Leo's Auto Sales, Inc.,* 158 Me. 368, 185 A.2d 121, 123–24

(1962); *Davis v. Noone,* 341 Mass. 488, 170 N.E.2d 468, 470 (1960); *Gross v. Morosky,* 366 Mich. 114, 113 N.W.2d 863, 864 (1962); *Williams v. Finance Plaza, Inc.,* 78 S.W.3d 175, 181 (Mo.Ct.App.2002); *Streeks, Inc. v. Diamond Hill Farms, Inc.,* 258 Neb. 581, 605 N.W.2d 110, 122 (2000); *Stewart v. Potter,* 44 N.M. 460, 104 P.2d 736, 738–39 (1940); *Horne v. Cloninger,* 256 N.C. 102, 123 S.E.2d 112, 113 (1961); *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228, 233 (Tenn.Ct. App.1976); *Columbia/HCA Healthcare Corp. v. Cottey,* 72 S.W.3d 735, 747 (Tex.App.2002); *Pace v. Parrish,* 122 Utah 141, 247 P.2d 273, 277 (1952); *Prospect Dev. Co. v. Bershader,* 258 Va. 75, 515 S.E.2d 291, 300 (1999); *Alexander Myers & Co. v. Hopke,* 88 Wash.2d 449, 565 P.2d 80, 85 (1977); *Lundin v. Shimanski,* 124 Wis.2d 175, 368 N.W.2d 676, 686 (1985).

ty.") (quotation omitted). Therefore, we join those jurisdictions that measure damages in fraudulent inducement and fraudulent misrepresentation cases by the benefit of the bargain rule.

When asked at trial what damages Litho was seeking, Haab testified, "there's no way I could be brought back to zero like it never happened. That could never happen, because of the law, but I would like my lease payments back...." Tr. p. 52. Haab also testified that he wanted Danka to take the copier back. Counsel for Litho then introduced Exhibit 5, which showed the total amount of damages requested as $31,929.07. Appellant's App. p. 63. Besides $575, which was the cost to install the copier and sound panels, the remainder of this figure represented what Litho had already paid under the lease and what it still had left to pay under the lease. In support of its motion for judgment on the evidence, Danka argued that Litho failed to present "evidence showing that it incurred any damages" because the damages it was seeking were rescission-type damages, not tort damages. Appellees' App. p. 68. The trial court agreed and granted Danka's motion. The trial court reasoned as follows:

> Clearly, the plaintiff has made the election to "affirm the contract." Unfortunately, the lease payments—past and future—are the plaintiff's obligation to pay under the very contract the plaintiff has affirmed. Damages cannot be premised upon the cost of compliance with a legal duty arising out of that contract.

Appellant's App. p. 14.

We agree with the trial court that a reimbursement of lease payments and a return of the copier are not proper damages in this case because this is the remedy that Litho would have been entitled to had it followed through on its claim for rescission of the contract. *See Freet,* 725 N.E.2d at 969 (noting that when a party seeks to rescind a contract, the party must return any benefits received under the contract and be returned to the status quo). However, Haab testified at trial that Linn promised him that the account, which came with the copier, would generate six million copies and $50,000 in profit per year. Tr. p. 19. This is a proper measure of benefit of the bargain damages, which place the parties in the same position as if the contract and representations had been fully performed. Considering the evidence in a light most favorable to Litho, we conclude that the trial court abused its discretion in granting Danka's motion for judgment on the evidence because there is evidence in the record to support an award of benefit of the bargain damages.

Reversed and remanded.

BAKER, J., concurs.

BARNES, J., concurs with separate opinion.

BARNES, Judge, concurring with separate opinion.

I write separately to concur. I do so because I believe that Litho did produce *some* evidence regarding the expected added business and profit that it was promised. Given that judgment on the evidence pursuant to Trial Rule 50 may only be entered if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim, I concur.

Whether or not the evidence produced in a subsequent hearing commands recovery is a matter yet unresolved.