Juan SANCHEZ a/k/a Johnny Sanchez,
Appellant–Defendant,

v.

Gerald BENKIE, Carol Benkie, Jack
Thompson, Diane Thompson, Pat
Tucker, and Dee Tucker, Appellees–
Plaintiffs.

No. 46A03–0209–CV–322.

Court of Appeals of Indiana.

Dec. 8, 2003.

John C. Hamilton, The Hamilton Law
Firm, South Bend, IN, Attorney for Appellant.

Douglas L. Biege, Newby, Lewis, Kaminski & Jones, LLP, LaPorte, IN, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Juan Sanchez ("Sanchez") challenges an award of compensatory damages to Appellees–Plaintiffs Gerald and Carol Benkie ("the Benkies"), Jack and Diane Thompson ("the Thompsons") and Pat and Dee Tucker ("the Tuckers") (collectively, "the Buyers") on their fraudulent inducement and breach of contract claims.[1] We reverse and remand.

### Issue

Sanchez presents a single issue for review, which we restate as follows: whether the trial court's award of compensatory damages is contrary to law.

### Facts and Procedural History

In late 1996 or early 1997, Sanchez purchased 27.4 acres of land in LaPorte County, Indiana for $30,000.00. There was a high water table in that area. Sanchez intended to subdivide the land into ten parcels, to be known as Twin Acres Estates Subdivision. Sanchez submitted site plans to the LaPorte County Health Department indicating that a subsurface drain line was installed in the proposed subdivision, and, based upon that representation, received approval for septic installation.

Sanchez presented his subdivision plan to the LaPorte County Plat Committee, indicating that he held an easement over adjoining property to facilitate a subsurface drain line. However, no subsurface drain line was installed and adjoining landowner Obed Kalwitz refused to grant a land easement to facilitate the proposed drain line. The LaPorte County Health Department rescinded all septic permits for the subdivision.

Nevertheless, Sanchez sold three lots in the subdivision, marketed as "septic approved." (App. 138.) The Benkies purchased a lot for $37,500.00, but were unable to obtain approval to build their proposed residence/business with a conventional septic system. The Thompsons purchased a lot for $34,000.00, but were likewise unable to obtain approval to build a house with a conventional septic system. The Tuckers purchased a lot for $25,095.00, but discovered that they were unable to install a conventional septic system. They moved in with relatives and eventually obtained approval to install an "experimental type two mound septic system" so that they could build a house on their own lot. (Tr. 201.) The Tuckers built a house and installed the two mound septic system, which Dee Tucker described as "a four foot high eyesore over most of the backyard." (Tr. 201–2.)

On January 5, 2000, the Benkies, the Thompsons and the Tuckers filed a complaint against Sanchez, alleging that Sanchez induced them to enter real estate contracts by fraudulently misrepresenting available drainage on the land and that Sanchez breached the real estate sales contracts. They sought compensatory and punitive damages. They did not seek rescission of the real estate contracts. On July 11, 2002, a bench trial was conducted.

---

1. In the Judgment entered August 19, 2002, the trial court also stated that Sanchez was "negligent in the development, platting and advertising of lots in the Twin Acres subdivision." (App. 7.) However, in the bench trial, the Buyers did not adduce evidence supporting a claim that Sanchez acted negligently. Rather, the Buyers alleged and established that Sanchez's conduct was intentional.

Gerald Benkie, Jack Thompson and Dee Tucker testified concerning their damages, aided in their testimony by written summaries of particular expenses. The summaries were not admitted into evidence. Neither Sanchez nor the Buyers requested findings of fact and conclusions of law. The judgment in favor of the Buyers, entered August 19, 2002, does not itemize what particular claimed expenses are included within the lump sum awarded each of the Buyers.

However, the trial court apparently attempted to order compensation to the Benkies for all claimed expenses. Gerald Benkie testified that he and his wife claimed $37,500.00 as the purchase price of a "practically worthless" lot, $5,325.78 interest, $174.43 property taxes, $500.00 attorney fees to obtain a zoning variance, $735.00 to move dirt, $1,000.00 in labor costs and $5,180.00 to change dies displaying an anticipated, but abandoned, business address. (Tr. 164.) These expenses totaled $50,415.21 and the trial court awarded one dollar more, or $50,416.21, as compensatory damages.

With respect to the Thompsons, the trial court awarded as compensatory damages only a portion of the claimed expenses. Jack Thompson testified that he and his wife incurred expenses as follows: $34,000.00 to purchase "worthless property," $6,824.34 interest, $164.00 property taxes, $1,772.00 labor costs and an unspecified amount for equipment to clear land (a wood chipper, saw, weed eater and riding mower). The trial court found the Thompsons' compensatory damages to be $42,536.34.

Dee Tucker testified that she and her husband paid $25,095.00 for the lot on which they built their current residence. She also testified that they incurred the following expenses: $5,436.00 for the increased cost of installing an experimental two mound septic system instead of a conventional septic system, "money paid to in-laws" while they provided a temporary home, and two house payments of an unspecified amount incurred while waiting on septic system modifications. The Tuckers also sought compensation in the amount of $15,000.00, the expected amount to convert from an experimental two mound septic system to a conventional septic system, should approval be obtained at some time in the future. The trial court awarded the Tuckers $35,508.00 as compensatory damages, which excluded some portion of the claimed expenses.

The trial court also awarded each plaintiff $5,000.00 as punitive damages. Sanchez now appeals, challenging only the award of compensatory damages.

**Discussion and Decision**

■ Sanchez challenges the Buyers' proof of damages as "wholly inadequate," a product of "a series of leading questions linked to exhibits used solely for demonstration purposes." Appellant's Br. at 10. Further, he alleges that the trial court's general judgment includes compensation for items that are speculative in nature (future septic installation) or otherwise inappropriate as consequential damages (charges for labor expended, purchase of equipment, changing dies). Finally, he contends that the trial court failed to measure damages by the standard appropriate in real estate fraud cases, specifically, the difference between the market value of the property as represented and the market value of the property received. With this latter contention, we agree.

■ The Buyers established that Sanchez made fraudulent misrepresentations to induce them to enter into the real estate contracts. The Buyers would not have purchased the parcels if they had been aware that the drainage pipe portrayed in

subdivision plat plans did not exist and that conventional septic systems were not permissible. In an action for fraud, the injured party is entitled to compensation for damage suffered as a result of the fraudulent representation. *Stoll v. Grimm*, 681 N.E.2d 749, 758 (Ind.Ct.App. 1997).

Generally, the rule for the measure of damages for fraud in the sale or exchange of property is the difference between the market value of the property received by the party allegedly defrauded and the value of such property at the time, had it been as represented to be by the vender. *Id.* An alternative measure of damages may be applicable in cases of fraudulent concealment, whereby damages are awarded to repair the property to make it conform to the condition it would have had without defects. *Id.*

Buyers point out that they sought recovery of damages on alternative theories and urge our consideration of *Lightning Litho, Inc. v. Danka Industries, Inc.*, 776 N.E.2d 1238 (Ind.Ct.App.2002), *trans. denied,* prescribing the measure of damages to be awarded in a claim of fraudulent inducement to enter a contract. The *Lightning* court observed that, generally, a party bringing an action for fraud in the inducement must elect between two remedies. *Id.* at 1241. That is, the party must rescind the contract, return any benefits received and be returned to the status quo or, alternatively, affirm the contract, retain the benefits and seek damages. A party who elects to affirm a contract induced by fraudulent misrepresentation may only seek tort damages. *Id.*

In *Lightning,* a separate panel of this Court adopted the rule of other jurisdictions that the "benefit of the bargain rule," traditionally used to measure damages in breach of contract cases, is also available to measure damages in fraudulent inducement cases, a "hybrid" of tort and contract. *Id.* at 1242. The Court described the "benefit of the bargain" measure of damages as "the difference between the value of the property as represented and the actual value of the property." *Id.* Thus, *Lightning* does not support the Buyers' contention that their damages should be measured "beyond the original purchase calculation." Appellee's Br. at 15. "It is a fundamental rule of damages that a party injured by a breach of contract may recover the benefit of his bargain but is limited in his recovery to the loss actually suffered.... [T]he injured party may not be placed in a better position than he would have enjoyed if the breach had not occurred." *Fowler v. Campbell,* 612 N.E.2d 596, 603 (Ind.Ct. App.1993).

Buyers elected to affirm rather than rescind their contracts. In one case, the land was used as a building site and a non-conventional septic system was installed. Regardless of whether the trial court awarded damages under the theory of breach of contract or the theory of fraudulent inducement to enter a contract, the applicable measure of damages is the "benefit of the bargain" or difference between the value of the property conveyed and the value of the property as it was warranted to be. Each of the Buyers is entitled to the difference between a parcel of land suitable for a conventional septic system and a parcel of land suitable only for a non-conventional septic system. There is conflicting evidence on this value. Sanchez paid slightly less than $1,200.00 per acre for unimproved farmland not suitable for building with a conventional septic system. Two of the Buyers opined the land was "worthless" while one Buyer erected a residence thereon.

The Buyers did not seek to be placed back in their original position. Rather, the Buyers retained the real estate, but nevertheless sought to recover the entire purchase price of each parcel and all expenses of retaining the parcels. They sought, and obtained, more than the "benefit of their bargain."

We reverse the award of compensatory damages apparently measured by the entire land purchase price and additional expenditures of funds and labor. We remand for the purpose of conforming the amount of compensatory damages to the law and the evidence presented.

Reversed and remanded.

NAJAM, J., and ROBB, J., concur.