

**FILED**

Aug 09 2019, 8:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| Sheila Tow | Ginny L. Peterson |
| Law Office of Sheila Tow, LLC | Kightlinger & Gray, LLP |
| Plainfield, Indiana | Indianapolis, Indiana |

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Metal Pro Roofing, LLC and Cornett Restoration, LLC, | August 9, 2019 |
| *Appellants-Defendants/CounterPlaintiffs,* | Court of Appeals Case No. 18A-PL-2205 |
| v. | Appeal from the Johnson Superior Court |
| The Cincinnati Insurance Company, | The Honorable Kevin M. Barton, Judge |
| *Appellee-Plaintiff/CounterDefendant* | Trial Court Cause No. 41D01-1501-PL-1 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Metal Pro Roofing, LLC and Cornett Restoration, LLC ("the LLCs") appeal

the trial court's grant of summary judgment in favor of The Cincinnati

Insurance Company ("Cincinnati") in a dispute over insurance coverage. We affirm in part and reverse in part.

# Facts and Procedural History

In February 2013, the LLCs, both of which are owned by Richard Cornett, discovered that someone had hacked into their bank accounts and stolen over $78,000. The next month, the LLCs made claims under insurance policies that had been issued to them by Cincinnati. They contend that the losses are covered under two different provisions of the CinciPlus Crime XC+ (Expanded Coverage Plus) Coverage Part of the policies: "Forgery or Alteration" and "Inside the Premises - Theft of Money and Securities."

The "Forgery or Alteration" coverage provides, in relevant part:

> We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in money that are
>
> > (1) Made or drawn by or drawn upon you; or
> >
> > (2) Made or drawn by one acting as your agent;
>
> or that are purported to have been so made or drawn.

Appellants' App. Vol. II pp. 58, 76.  The policies define "forgery," in relevant part, as "the signing of the name of another person or organization with intent to deceive[.]"  *Id.* at 69, 87.  The policies do not define "alteration."

[4]     The "Inside the Premises" coverage provides, in relevant part:

> We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":
>
>> (1) Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or
>>
>> (2) Resulting directly from disappearance or destruction.

*Id.* at 58, 76.  The policies define "premises" as "the interior of that portion of any building you occupy in conducting your business"; they define "banking premises" as "the interior of that portion of any building occupied by a banking institution or similar safe depository."  *Id.* at 67, 69, 85, 87.

[5]     Concluding that the computer-hacking losses are not covered by these provisions, Cincinnati denied the LLCs' claims.  It then filed a lawsuit seeking a declaratory judgment confirming its coverage determination.  The LLCs answered that complaint and filed a counterclaim for damages.  Count I of the counterclaim alleged breach of contract—that the losses are covered by the "Forgery or Alteration" and "Inside the Premises" provisions and that therefore Cincinnati "wrongfully denied the claims[.]"  *Id.* at 104.  In Count II, the LLCs alleged insurance bad faith, specifically, that Cincinnati

acted in bad faith in handling the insurance claim by making an unfounded refusal to pay policy proceeds, causing an unfounded delay in making payment, deceiving [the LLCs] without a rational or principled bases for denial of the claim, although the company intended this situation to be covered by the Crimes coverage and has made public representations that the commercial crime insurance is intended to protect insured business clients from someone hacking into their computers and into their bank accounts to steal money.

*Id.* at 105.

[6] The parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of Cincinnati on all issues but one. It ruled that (1) the claimed losses are not covered under the terms of the policies and (2) because the losses are not covered under the terms of the policies, the LLCs' first two theories of bad faith—"unfounded refusal to pay policy proceeds" and "unfounded delay in making payment"—must fail. *Id.* at 22. As for the LLCs' third theory of bad faith—that Cincinnati had "deceiv[ed]" them—the court noted that the counterclaim "does not aver any facts as would support" such a claim but nevertheless allowed the claim to proceed, explaining that "Cincinnati designates no evidence to the Court on summary judgment on this claim[.]" *Id.* at 22-23.

[7] The LLCs then amended their counterclaim. They alleged that even if their computer-hacking losses do not fall under the Crime XC+ coverage, certain language in Cincinnati's **quotes** for that coverage led them to believe that such losses would be covered if they purchased the coverage. The LLCs attached

two such quotes to the amended counterclaim.  The quotes begin with the following language:

> Businessowners typically think of your buildings, inventory, furniture, office equipment, automobiles and mobile equipment when designing an insurance program to protect your assets. Ironically, you would be overlooking what is arguably one of your most valuable assets – your money and securities.
>
> Cincinnati can insure your money and securities while at your premises, inside your bank and even off site in the custody of a courier.  While you've taken precautions to protect your money and securities, you run the risk of loss from employees, robbers, burglars, **computer hackers** and even physical perils such as fire.
>
> Give yourself peace of mind with Cincinnati's crime coverage to insure the money and securities you worked so hard to earn.
>
> **Crime Expanded Coverage (XC®)Plus Endorsement    $125.00**

Appellants' App. Vol. IV p. 224-25 (emphasis added).[1]

[8]    Cincinnati again moved for summary judgment.  It argued, in part, that the above-quoted language does not amount to a representation that computer-hacking losses would be covered and that even if the language could be read

---

[1] Cincinnati emphasizes that at least one of the quotes the LLCs attached to their amended counterclaim was not issued until after the LLCs had already discovered the computer-hacking losses, so the LLCs could not have relied on it when deciding to purchase the policies at issue.  However, as we note below, Cornett stated in an affidavit that Cincinnati had used the same quote language since the LLCs first purchased the Crime XC+ coverage in 2011.  In other words, there is evidence (unchallenged by Cincinnati) that the quotes in the record are exemplars of the quotes Cincinnati issued in previous years.

that way it is followed by this disclaimer (in fine print at the bottom of the page):

> This proposal is based on rating information supplied by you and is valid for 30 days from the date quoted, subject to any pending rules and rate filings. It is also subject to normal underwriting consideration, favorable inspection and acceptable loss experience. **This is not a policy. For a complete statement of the coverages and exclusions, please see the policy contract.** Each insurer has sole financial responsibility for its own products. Not all Cincinnati subsidiaries operate in all states.

*Id.* at 224 (emphasis added).

In support of their response to Cincinnati's motion, the LLCs designated an affidavit from Cornett. He asserted, among other things, that (1) he "accepted" the Crime XC+ coverage for the LLCs in 2011, (2) Cincinnati provided "the same Crime quote and description every year from the first year (2011) and at each renewal," and (3) he "relied on the description" provided by Cincinnati. Appellants' App. Vol. VIII pp. 99-100.

Cincinnati moved to strike Cornett's statement that he "relied on the description" of the Crime XC+ coverage in Cincinnati's quotes. Citing the principle that a party cannot avoid summary judgment simply by designating an affidavit that directly contradicts the affiant's prior deposition testimony, *see Gaboury v. Ireland Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1314 (Ind. 1983), Cincinnati argued that Cornett had testified in an earlier deposition that "he did not even read [the description] much less read the Policy prior to the alleged

loses." Appellants' App. Vol. IX p. 75. The trial court granted Cincinnati's motion to strike, concluding that Cornett's statement that he "relied on the description" is "contrary to the deposition testimony at pages 81 and 82 that he did not read the policy until after the loss." Appellants' App. Vol. II p. 26.

[11] In a separate order issued the same day, the trial court granted Cincinnati's motion for summary judgment. It analyzed the LLCs' amended counterclaim as one for fraud, fraudulent inducement, and/or estoppel. The court actually ruled in favor of the LLCs in part. That is, the court concluded that a finder of fact could read the language of Cincinnati's quotes for Crime XC+ coverage as a (false) representation that the coverage includes "coverage against loss of money or securities on deposit at a financial institution from computer hackers[.]" *Id.* at 38. However, consistent with its ruling on Cincinnati's motion to strike, the court also concluded that "Mr. Cornett did not rely upon the document because it wasn't read." *Id.* The court found this "lack of reliance" to be fatal to any claim of fraud, fraudulent inducement, or estoppel. *Id.* at 38-39.

[12] The LLCs now appeal.

# Discussion and Decision

[13] The LLCs challenge both of the trial court's summary-judgment orders. We review motions for summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). That is,

"The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

# I. First Summary-Judgment Order

Regarding the first summary-judgment order, the LLCs argue that the trial court erred by concluding that their computer-hacking losses are not covered by the "Forgery or Alteration" or "Inside the Premises" provisions. We disagree.

The "Forgery or Alteration" coverage applies to losses resulting directly from the "'forgery' or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in money[.]" The policies define "forgery" as "the signing of the name of another person or organization with intent to deceive[.]" The LLCs do not cite any evidence that the hacker "signed" anything, let alone that they signed "the name of another person or organization." And as for "alteration," while that term is not defined in the policies, it obviously assumes the existence of some item that is capable of being "altered." The LLCs fail to identify an item that was allegedly "altered" when the thief hacked into the LLCs' bank accounts. To be sure, using a computer to hack into someone else's bank account to steal money clearly involves wrongful conduct. However, by arguing that it involves "forgery" or "alteration" of a check, draft, promissory note, or similar written promise, order, or direction, the LLCs are attempting to put a square peg in a round hole.

[16] The same can be said with regard to the "Inside the Premises" coverage. Again, that coverage applies to losses resulting directly from "'theft' committed by a person present inside [the business's] 'premises' or 'banking premises[.]'" The policies define "premises" as "the interior of that portion of any building you occupy in conducting your business," and they define "banking premises" as "the interior of that portion of any building occupied by a banking institution or similar safe depository." The LLCs do not direct us to any evidence that the person who committed the thefts was inside the LLCs' building(s) or a bank building. (The "Inside the Premises" coverage also applies to losses resulting from the "disappearance or destruction" of money and securities, but the LLCs make no argument that either of those terms is relevant here.)

[17] In challenging the first summary-judgment order, the LLCs also contend that the trial court erred by striking one of the exhibits they designated: Cincinnati's Crime XC+ quote for Metal Pro dated 2/25/13. We need not address that argument. Even if we were to agree that the quote should not have been stricken, that would not impact our ultimate conclusion that the computer-hacking losses are not covered under the plain language of the "Forgery or Alteration" or "Inside the Premises" provisions.

## II. Second Summary-Judgment Order

[18] The LLCs also assert that the trial court erred by granting summary judgment in favor of Cincinnati on the LLCs' claim that Cincinnati's quotes for the Crime

XC+ coverage led them to believe that computer-hacking losses **would be** covered if they purchased that coverage. On this point we agree with the LLCs.

[19] As noted above, the trial court analyzed the LLCs' amended counterclaim as a claim of fraud, fraudulent inducement, and/or estoppel. It noted that a party claiming fraud must establish that (1) the party to be charged made a material representation of past or existing facts, (2) the representation was false, (3) the representation was made with knowledge or reckless ignorance of the falseness, (4) the representation was relied upon by the complaining party, and (5) the reliance proximately caused the complaining party injury. *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015), *trans. denied*. It also noted that "[f]raudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract." *Lightning Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. The court then concluded—though Cincinnati does not acknowledge it in its brief on appeal—that a finder of fact could read the language of Cincinnati's quotes for Crime XC+ coverage as a false representation that the coverage includes "coverage against loss of money or securities on deposit at a financial institution from computer hackers[.]"

[20] We concur in the trial court's reading of Cincinnati's quotes. The quotes provided, in relevant part:

> Cincinnati can insure your money and securities while at your premises, inside your bank and even off site in the custody of a courier. While you've taken precautions to protect your money

and securities, you run the risk of loss from employees, robbers, burglars, **computer hackers** [emphasis added] and even physical perils such as fire.

Give yourself peace of mind with Cincinnati's crime coverage to insure the money and securities you worked so hard to earn.

### Crime Expanded Coverage (XC®)Plus Endorsement  $125.00

It would be entirely reasonable for a prospective insured to read that language, in that sequence, to mean, "If you want to be covered for theft by computer hackers, you should buy this endorsement."

[21] Having ruled in favor of the LLCs on that issue, however, the court held that the LLCs' fraud claims nonetheless fail because Cornett "did not rely upon the document because it wasn't read." This is where the trial court erred. In an affidavit designated by the LLCs, Cornett specifically stated that he "relied on the description" of the Crime XC+ coverage in Cincinnati's quotes when he decided to purchase that coverage. The trial court struck that statement on the ground that it conflicted with Cornett's earlier deposition testimony. *See Gaboury*, 446 N.E.2d at 1314. But that is incorrect. In the portions of the deposition cited by the trial court, Cornett testified only that he did not read the Crime XC+ portions of **the actual policies** until Cincinnati denied the LLCs' claims; he did not testify that he did not read or rely on **the descriptions in the quotes** when deciding to purchase the policies. *See* Appellants' App. Vol. V pp. 77-78. As such, there is no conflict between Cornett's deposition testimony and the statement in his affidavit that he "relied on the description" in the quotes.

The trial court should not have stricken that statement or granted Cincinnati summary judgment on that basis.

[22] We briefly address two arguments made by Cincinnati. First, it asserts that even if the language of the quotes could be read as a representation that computer-hacking losses would be covered under the Crime XC+ coverage, any reliance on that language was unreasonable because it was accompanied by the following disclaimer:

> This proposal is based on rating information supplied by you and is valid for 30 days from the date quoted, subject to any pending rules and rate filings. It is also subject to normal underwriting consideration, favorable inspection and acceptable loss experience. **This is not a policy. For a complete statement of the coverages and exclusions, please see the policy contract.** Each insurer has sole financial responsibility for its own products. Not all Cincinnati subsidiaries operate in all states.

Appellants' App. Vol. IV p. 224 (emphasis added). Cincinnati does not cite any authority for the proposition that such a disclaimer neutralizes otherwise misleading quote language. The trier of fact should decide whether the disclaimer in this case—which appears in fine print at the bottom of the quotes—had that effect.

[23] Cincinnati also contends that it cannot be held liable for any misrepresentation because the quotes were given to the LLCs by their insurance agency, Huntington Insurance, rather than by Cincinnati itself. That is true, but only in the literal sense: Cincinnati sent the quotes for the LLCs to Huntington, which

in turn gave the quotes to the LLCs as part of a larger insurance proposal. There is no dispute, however, that Cincinnati, not Huntington, drafted the quotes. Cincinnati does not cite any authority suggesting that it is free to say whatever it pleases in its quotes as long it does not deliver those quotes directly to the prospective insured.

[24] For all of these reasons, we reverse the trial court's second summary-judgment order and remand this matter for trial on the LLCs' amended counterclaim.

[25] Affirmed in part and reversed in part.

Kirsch, J., and Altice, J., concur.